S93A1956. ADAMS v. THE STATE.
S93A1957. HINTON v. THE STATE.
S93A1958. WARD v. THE STATE.
(440 SE2d 639)

BENHAM, Justice.

These appeals are from appellants' convictions for malice murder and aggravated assault.[1] The evidence at trial authorized the jury to find as fact the following sequence of events. Appellants and two others, Hand and Smith, gathered to attend a county fair on the evening of the murder. Prior to leaving for the fair, Adams suggested that there might be trouble at the fair and asked Smith to get a sawed-off shotgun to which he had access and to bring shells for it. Adams put the shotgun in the trunk of his car and put the shells on the dashboard. When Adams and Smith got to Ward's home, Ward put a .22 caliber pistol in the car. On the way to the fair, the presence of the shotgun was discussed by the whole group. Trouble did arise at the fair in the form of a confrontation between appellants and their friends and another group of young men which included the victims in these cases. Hinton knew the victims and asserted that the murder victim had threatened to shoot him and that the aggravated assault victim held a gun to his head at the fair. When both groups were required to leave the fair, the two victims departed on foot and appellants left with Smith and Hand in Adams' car with Ward driving. All five of appellants' group were angry about being ejected from the fair. Driving around while allegedly looking for a party, the group saw the two victims walking and began discussing whether to confront them. At the mention that the victims might be armed, Hinton suggested getting the shotgun from the trunk. Ward stopped at a convenience store and left the car while Adams opened the trunk and Hinton got the shotgun. When they left the convenience store, Ward was driving, Adams was in the front passenger seat, Hinton was on the passenger side of the back seat, with Hand in the middle of that seat and Smith behind the driver. Adams handed the shotgun shells to Hinton, who loaded the weapon. The group then rode around until they spotted the victims again, whereupon there was some discussion about scaring the victims. Ward turned off the headlights and drove up behind the

---

[1] The offenses were committed and appellants were arrested on September 25, 1992. An indictment charging them with malice murder and aggravated assault was filed on January 5, 1993, and appellants were tried on February 1-3, 1993. All three were convicted on both counts and sentenced to life imprisonment and a concurrent term of 20 years. Motions for new trial were filed on February 26, 1993, by Adams; on March 4, 1993, by Ward; and on March 8, 1993, by Hinton. Adams' motion for new trial was denied on March 25, 1993, and the other two were denied on July 30, 1993. Hinton filed his notice of appeal on March 8, 1993; Adams on April 13, 1993; and Ward on August 9, 1993. The appeals were docketed in this court on September 22, 1993, and oral argument was heard on January 18, 1994.

victims. Adams and Hinton pulled hoods up to cover their heads. As the car pulled even with the victims, Adams held a pistol out of the window and fired into the air. Hinton then leaned over Smith and Hand, both of whom ducked, stuck the shotgun out of the driver's-side back window, and fired one shot in the direction of the victims, one of whom was fatally wounded by that single shot. After arguing over whether Hinton had hit anyone with his shot, with Hinton expressing the hope that he had killed one of the victims, the group went to Smith's brother's house to stash the guns. All five occupants of the car were arrested and subsequently indicted for malice murder and aggravated assault. Smith entered a guilty plea to aggravated assault as an included offense of murder and was sentenced to ten years, five to serve. A nolle prosequi was entered as to the second count with regard to Smith and as to both counts with regard to Hand.

1. "[I]t is the duty of this court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction. [Cits.]" *Stephenson v. Futch*, 213 Ga. 247 (1) (98 SE2d 374) (1957). We note that Hinton's appeal would be subject to dismissal for failure of his counsel to file a timely motion for new trial or notice of appeal, but inasmuch as the failure to file the appeal would be considered ineffective assistance of counsel, entitling Hinton to an out-of-time appeal, we will consider his enumerations of error under the reasoning of *Thornton v. Ault*, 233 Ga. 172 (210 SE2d 683) (1974), and *Mitchell v. State*, 157 Ga. App. 181 (1) (276 SE2d 864) (1981). See also *American Druggists' Ins. Co. v. Harris*, 253 Ga. 535, n. 1 (322 SE2d 496) (1984), noting that an out-of-time appeal can be considered in a criminal case, even without an order of the trial court, "where counsel would be deemed ineffective by failing to perfect a timely appeal. [Cits.]"

2. The facts set out above establish that the evidence was sufficient to authorize a rational trier of fact to find appellants guilty of both offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

"Mere presence at the scene is not sufficient to convict one of being a party to a crime," but criminal intent may be inferred from conduct before, during, and after the commission of the crime. [Cit.]

*Sands v. State*, 262 Ga. 367 (2) (418 SE2d 55) (1992).

3. All three appellants filed motions for severance of their trials from the others, arguing that confusion was inevitable in this case due to the number of defendants and their interlocking statements.

Factors to be considered by the trial court in exercising its discretion concerning a request for severance are: "whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against another defendant despite cautionary instructions to the contrary; and whether the co-defendants will press antagonistic defenses. [Cit.]" To be successful, a defendant seeking severance must clearly show that the joinder will result in prejudice to him or her and a consequent denial of due process. [Cit.] The trial court's ruling as to a request for severance will only be overturned where an abuse of discretion on the part of the trial court can be demonstrated. [Cit.]

*Brown v. State*, 262 Ga. 223 (2) (416 SE2d 508) (1992).

It is incumbent upon the defendant seeking severance to show that he will be prejudiced by a joint trial. It is not enough to claim that he has a better chance of acquittal in a separate trial. Rather, the burden is on defendant to show clear prejudice and in the absence of this showing the trial court's denial of the motion to sever will not be disturbed. [Cits.]

*Satterfield v. State*, 256 Ga. 593 (3) (351 SE2d 625) (1987).

Appellants have not shown the requisite prejudice required to make the denial of their motions to sever an abuse of discretion. Their defenses were not genuinely antagonistic since there was no dispute concerning which actions were taken or by whom, and all the defendants relied on lack of intent. As to confusion between the defendants, we note that the trial court repeatedly instructed the jurors that pretrial statements were to be considered only against the makers of the statements and that the jury was required to make an independent judgment of the guilt or innocence of each of the defendants separately. Under those circumstances, we find no abuse of discretion in the denial of the motions to sever. See also *Kesler v. State*, 249 Ga. 462 (4) (291 SE2d 497) (1982).

4. Adams and Ward complain that the trial court erred in permitting the State to impeach Hand and Smith through the use of statements given by the witnesses to two police officers prior to trial. The chief argument they make on appeal is that the State failed to lay the proper foundation to impeach its own witnesses. However, even assuming that the objections made at trial were directed to the failure to lay a foundation, appellants did not, as they must, state what the proper foundation would be.

" 'Objection on the ground of a lack of proper foundation without stating what the proper foundation should be is insufficient and presents nothing for consideration on appeal. (Cits.)' *Newman v. State*, 239 Ga. 329, 330 (236 SE2d 673) (1977)." [Cit.]

*Sinkfield v. State*, 201 Ga. App. 284 (4) (411 SE2d 68) (1991).

Insofar as appellants' argument on appeal is that they were denied their right to confront the witnesses against them, specifically the officers who took the contested statements, their argument is without merit: both officers testified and were available for cross-examination by appellants. Thus, there was no denial of appellants' right to confrontation.

5. Adams and Hinton complain of the trial court's refusal to permit them to have additional peremptory jury strikes. Defendants being tried jointly do not have a right to additional strikes.

When two or more defendants are tried jointly for a crime or offense, such defendants shall be entitled to the same number of strikes as a single defendant if tried separately. The strikes shall be exercised jointly by the defendants or shall be apportioned among the defendants in the manner the court shall direct. In the event two or more defendants are tried jointly, the court, upon request of the defendants, acting in its sole discretion, may allow an equal number of additional strikes to the defendants, not to exceed five each, as the court shall deem necessary, to the ends that justice may prevail.

OCGA § 17-8-4. The statute places the decision whether to grant additional strikes in the sole discretion of the trial court, and a trial court's exercise of that discretion will be disturbed only where an abuse of discretion can be demonstrated. *Willis v. State*, 258 Ga. 477 (2) (371 SE2d 376) (1988).

Adams' complaint is that he would have made different decisions about which jurors to strike, but he has not alleged any harm arising from the selection of the jury. If Hinton's argument is, as it appears, that he should have had more strikes which he would have used to remove prospective jurors on the basis of race, his assertion of prejudice is without foundation because such strikes are forbidden. *State v. Carr*, 262 Ga. 893 (427 SE2d 273) (1993). We find no abuse in the trial court's denial of additional jury strikes.

6. All three appellants made pretrial statements. Those statements, redacted to remove names, were read to the jury. Adams and Hinton complain that the statements were inadequately redacted in

that they did not remove all reference to the defendants. Appellants rely largely on *Richardson v. Marsh*, 481 U. S. 200 (107 SC 1702, 95 LE2d 176) (1987), for the proposition that redaction must remove not only names, but all reference to even the existence of co-defendants. The problem with that argument is that *Richardson* is based on *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), and like *Bruton*, applies only to the statements of non-testifying co-defendants.

> The evil *Bruton* sought to cure was the violation of the Confrontation Clause of the Sixth Amendment. [Cit.] Once appellant's co-defendant took the stand and answered questions concerning his statement, he was subject to cross examination by the appellant and the *Bruton* rule had no application.

*Depree v. State*, 246 Ga. 240 (1) (271 SE2d 155) (1980). The result is the same here: once appellants all testified, there was no *Bruton* problem and, therefore, no problem regarding redaction of the pretrial statements.

In addition to his shared reliance on *Richardson*, Hinton argues that the redaction somehow made his statement more prejudicial to him than before redaction. He does not, however, make any specific reference to what portion of his statement was made more prejudicial by redaction, and our review of the record does not make his argument any clearer. We find no error in permitting the redacted statements to be read before the jury.

7. Adams and Hinton also enumerate as error the denial of their motions for mistrial based on the trial court's admonition to Hinton's counsel to get on with the case. Adams contends that the trial court's remarks constituted a show of partiality and a lack of respect that prejudiced the jurors. Hinton also complains of partiality and argues in addition that the trial court illegally commented on the value of evidence being adduced by Hinton's counsel.

As to the question of partiality, our review of the record does not support the characterization of the incident given it by appellants. In the course of a colloquy with counsel regarding the relevance of a line of questioning, the trial court said, "[P]lease, for God's sake, go on, sir." Given the mild nature of the admonition to counsel, and especially considering the trial court's immediate and complete instruction to the jury, emphasizing the trial court's neutrality and the jury's duty to decide the case on the evidence, we find no show of partiality prejudicial to appellants.

We cannot agree with Hinton that the trial court's remark constituted an illegal comment on what had been proved. The trial court

was doing its duty in controlling the conduct of the trial, engaging in colloquy with counsel concerning the relevancy of evidence.

> The rule which prohibits an expression or intimation of opinion by the trial court "as to what has or has not been proved," OCGA § 17-8-57, "does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence. [Cits.]" [Cit.]

*Kinsman v. State,* 259 Ga. 89 (13) (376 SE2d 845) (1989). We find no error in the denial of the motions for mistrial.

8. Adams complains that the verdict form employed by the trial court did not adequately separate the defendants as his own suggested verdict form would have done. The form Adams proffered had three divisions, one for each defendant, with each division having a subpart for each count of the indictment. The form the trial court used had two divisions, one for each count of the indictment, and each division had three subparts, one for each defendant. In light of the careful and clear instructions given by the trial court to the effect that separate verdicts for each defendant were required, we see no likelihood of prejudice resulting from the verdict form used by the trial court.

9. Adams has enumerated as error the trial court's instruction on aggravated assault, contending that the charge given permitted the jury to find him guilty of a form of the offense with which he was not charged. The instruction given was the pattern jury instruction for aggravated assault which includes reference to the elements of simple assault, one of which is putting the victim in apprehension of receiving a violent injury.

> "A simple assault is defined as . . . an act which places another in reasonable apprehension of immediately receiving a violent injury. [OCGA § 16-5-20 (a) (2).] An assault becomes aggravated when it is perpetrated . . . by use of a deadly weapon. [OCGA § 16-5-21 (a) (2).] Thus, '[a]ggravated assault with a deadly weapon is completed when a simple assault is committed by means of a deadly weapon,' [cit.]." [Cit.] It is the reasonable apprehension of harm by the victim of an assault by a firearm that establishes the crime of aggravated assault . . . .

*Collins v. State,* 199 Ga. App. 676, 677 (405 SE2d 892) (1991). It is apparent, therefore, that the trial court's instruction on the offense of aggravated assault with a deadly weapon did not change the nature of the crime with which appellants were charged and was not erroneous.

10. A custodial statement made by Hinton was admitted into evi-

dence at trial. He contends on appeal that the admission was error because the statement was not voluntary in that he was too young to understand his rights (he was age 19); he was threatened; he was held incommunicado; and he was questioned after invoking his right to be silent.

Counsel's assertion to this court that Hinton told officers prior to making his statement that he had nothing further to say is not supported by the record. Hinton testified at the hearing held to determine whether his statement was voluntary, but made no mention of telling the officers at any point that he had nothing further to say. That language came into the case when counsel questioned one of the interrogating officers and asked a compound question which concluded ambiguously with a suggestion either that Hinton had told the officer that he had nothing further to say or that Hinton merely finished a statement and said nothing further. Hinton's own testimony makes the latter interpretation more reasonable. But notwithstanding which interpretation of counsel's question is adopted, the trial court had sufficient evidence to conclude that the statement was voluntary.

> [Hinton] was afforded a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), following which the trial court determined that [Hinton] understood his *Miranda* rights and freely and voluntarily waived them. Unless clearly erroneous, a trial court's findings relating to the admissibility of an incriminating statement will be upheld on appeal. [Cits.] Under the circumstances of this case, we find no error in the admission of [Hinton]'s statement. [Cit.]

*Carter v. State*, 257 Ga. 510 (3) (361 SE2d 175) (1987).

11. During the cross-examinations of Adams and Ward, the prosecuting attorney impeached them by reference to statements they had given while in custody. Hinton complains that the trial court erred in permitting the prosecuting attorney to read from documents which had not been admitted into evidence. Although counsel is correct that the specific documents from which the prosecuting attorney read had not been admitted into evidence, the content of the documents had been read into the record by the police officer whose notes they were. The statements were being used to lay a proper foundation for impeaching the two witnesses, and we find no error in the overruling of Hinton's objections. See *Rollins v. State*, 262 Ga. 698 (425 SE2d 285) (1993).

12. Finally, Hinton enumerates as error the trial court's recharge to the jury. While deliberating, the jury asked the trial court why, since it was given the option of finding Hinton guilty of voluntary

manslaughter or involuntary manslaughter under the murder count of the indictment, it had not been given that option with regard to Adams and Ward. The trial court's response was to remind the jury that all three defendants were charged with murder, but that due to the facts and circumstances of the case, the court had given them the option of finding Hinton guilty of the lesser included offenses. Hinton argues that the recharge was a comment on what had been proved in that it intimated to the jury that he was guilty and that the court wanted to give the jury as many chances to convict him as possible. We find no such implication in the trial court's recharge. A more likely inference to be drawn was that the trial court thought Hinton was guilty, if at all, of less than the other defendants.

"[I]t is not necessary in considering a charge to assume a possible adverse construction, for a charge that is sufficiently clear to be understood by jurors of ordinary capacity and understanding is all that is required."

*Murdix v. State,* 250 Ga. 272 (2) (297 SE2d 265) (1982). Under the circumstances of this case, including the fact that Hinton requested the charges on included offenses and the other appellants requested that such charges not be given as to them, we find the recharge sufficiently clear.

*Judgments affirmed. All the Justices concur, except Carley, J., who concurs in the judgments and in all divisions of the opinion except Division 1.*

DECIDED FEBRUARY 28, 1994 —
RECONSIDERATION DENIED MARCH 25, 1994.

*Rosenzweig, Jones & MacNabb, George C. Rosenzweig,* for appellant (case no. S93A1956).

*Glover & Davis, R. Keith Prater,* for appellant (case no. S93A1957).

*Fanning & Hudson, Steven E. Fanning,* for appellant (case no. S93A1958).

*Peter J. Skandalakis, District Attorney, Agnes T. McCabe, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige M. Reese, Staff Attorney,* for appellee.