## A99A1876. O'BRIEN v. THE STATE.
### (529 SE2d 657)

RUFFIN, Judge.

Siobhan Eileen O'Brien was convicted by an Atlanta City Court jury of driving under the influence of alcohol and improperly driving on a roadway laned for traffic.[1] O'Brien appeals the order of the city court denying her motion for new trial.[2] She enumerates as error that the evidence was insufficient to support her DUI conviction, that she was afforded ineffective assistance of counsel, and that the State improperly commented on her right to remain silent following the traffic stop in which she was cited for DUI. Because we find no merit in these enumerations of error, we affirm.

1. The record does not support O'Brien's argument that the evidence is insufficient[3] to support the DUI conviction.[4] On appeal the evidence must be viewed in a light most favorable to the verdict, and O'Brien no longer enjoys the presumption of innocence.[5] Viewed in that light, the State's evidence was as follows.

At 4:00 a.m. on October 6, 1994, Officer Smail of the City of Atlanta Police Department saw a car turn onto Roswell Road and weave back and forth twice across two lanes, before abruptly stopping, signaling, and making a left turn. The officer stopped the car and asked the driver, O'Brien, for her driver's license. Officer Smail noticed a strong odor of alcohol on O'Brien's breath and had difficulty understanding her speech. O'Brien used the car door to pull herself out of her vehicle. Upon Officer Smail's request, O'Brien agreed to

---

[1] OCGA §§ 40-6-391 (a) (1); 40-6-48.

[2] O'Brien was convicted on June 8, 1995. Her initial motion for new trial was dismissed on September 18, 1995, because her attorney failed to appear in court. O'Brien filed a notice of appeal on October 2, 1995. By our order of April 1, 1996, the case was remanded to the trial court to allow the filing of a motion for new trial and an evidentiary hearing on O'Brien's claim of ineffective assistance of counsel. The trial court denied O'Brien's motion for new trial on May 14, 1996. O'Brien filed a notice of appeal on June 12, 1996. After a considerable delay, the appeal was received by this court on May 20, 1999.

[3] O'Brien did not question the sufficiency of the evidence in the hearing on her motion for new trial, which was limited by our order of April 1, 1996, to the issue of ineffective assistance of counsel. However, because we are not certain that O'Brien had a reasonable opportunity to raise this claim earlier, we will consider this enumeration of error.

[4] O'Brien does not argue the sufficiency of evidence with respect to the lane violation.

[5] *Brantley v. State*, 230 Ga. App. 651 (1) (497 SE2d 399) (1998).

participate in a field sobriety test, which the officer had been trained to administer.

Officer Smail administered a horizontal gaze nystagmus ("HGN") test to O'Brien. Before administering the HGN test, the officer asked O'Brien if she was on any medication, and she said no. During the HGN test, the officer observed the tracking of O'Brien's eyes as they followed a stimulus passing back and forth before her face. In the opinion of Officer Smail, the HGN test indicated that O'Brien was impaired. Smail then prepared to administer a "nine step walk and turn" test and asked O'Brien if she had any injuries that might affect her balance. O'Brien informed the officer that she had a spinal injury. Without performing any additional field sobriety tests, the officer, believing O'Brien to be less safe to drive, placed her under arrest for DUI. At trial, O'Brien admitted to having consumed four beers.

The evidence is sufficient to authorize a rational trier of fact to find O'Brien guilty beyond a reasonable doubt of DUI.[6]

2. In her second enumeration of error, O'Brien contends that her motion for new trial should have been granted due to ineffective assistance of counsel.

In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*,[7] O'Brien must show both that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[8] Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.[9] Furthermore,

[t]here is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.[10]

---

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Forsman v. State*, 239 Ga. App. 612 (1) (521 SE2d 410) (1999).

[7] 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[8] *Bowley v. State*, 261 Ga. App. 278, 280 (4) (404 SE2d 97) (1991).

[9] *Stephens v. State*, 265 Ga. 120, 121 (2) (453 SE2d 443) (1995).

[10] (Punctuation omitted.) *Binion v. State*, 222 Ga. App. 333, 334 (1) (474 SE2d 208) (1996).

In her brief, O'Brien includes an almost endless list of complaints against her trial counsel, including complaints that he: (1) failed to call a doctor as a witness to document her spinal injury; (2) failed to call a doctor to confirm that O'Brien was hypoglycemic; (3) failed to ensure the admission of O'Brien's medical records into evidence by subpoenaing the doctors responsible for generating the medical reports; (4) failed to make a motion to compel discovery; (5) failed to obtain discovery of the police videotape in advance of trial; (6) maintained a demeanor at trial that was aggravating to the court and the jury; (7) struck juror Abner by mistake, rather than juror Adams and (8) made numerous improper statements in his opening and closing statements to the jury.

We have reviewed the record and find that, other than as discussed below with respect to juror Adams, we agree with the trial court's finding that counsel's performance was not deficient. Counsel's failure to subpoena medical doctors is understandable, because no experts had been retained by O'Brien. She was not willing to pay for a doctor to testify.[11] The expert "from Tennessee" dismissed by counsel had apparently been retained only for an earlier court date. In any case, we do not know whether these unnamed doctors, who did not testify at the hearing on motion for new trial, would have helped O'Brien's case. O'Brien argues that counsel should have compelled discovery to ascertain the exact charges against her but fails to show any surprise or prejudice. Discovery of the police videotape was impossible, because there was no tape. Counsel's demeanor at trial was aggressive and perhaps occasionally patronizing, but this was a matter of style within the bounds of reasonable behavior. Counsel's opening and closing statements, viewed as a whole, are consistent with a reasonable trial strategy.

After the jury was selected, trial counsel admitted to making a mistake in striking juror Abner rather than juror Adams, who neither drinks nor drives.[12] This was not a mistake in judgment, but rather a matter of misidentification, or "flip-flopping," of the jurors' names. Although we cannot say that no reasonable attorney would have allowed juror Adams to remain on the jury, juror Adams remained on this jury due only to confusion on the part of trial counsel and not as a matter of strategy. Considering, however, that juror Adams was not openly prejudiced against O'Brien and that the evidence supports the verdict, we cannot say that but for counsel's error,

---

[11] O'Brien's attorney asked: "Were you willing to pay for the doctor to come and testify?" O'Brien responded: "No, I was not."

[12] Juror Adams said: "I can't see a person getting into the car with somebody that's drunk either. Because I don't drive, you know. . . ."

the result of the proceeding would have been different.[13]

3. O'Brien contends that the State committed prosecutorial misconduct by commenting on her right to remain silent following the traffic stop in which she was cited for DUI. As part of her defense, O'Brien maintained she was using medication which may have caused her to seem impaired. In her closing argument, the prosecutor stated "the first we heard about the drugs is today."[14] This comment, O'Brien suggests, is a prosecutorial comment on her right to remain silent and is not allowed because such a statement is more prejudicial than probative.[15]

O'Brien did not object to the prosecutor's statement at trial or otherwise preserve this issue for appellate review. As this is a court for the correction of error of law, we will not consider any issues raised on appeal that were not raised and preserved in the trial court.[16] Even if O'Brien had preserved this issue for appeal, it would not warrant reversal. The evidence shows that O'Brien responded negatively when the arresting officer asked her if she was on any medication.[17] Thus, the comment by the prosecutor was a comment on the evidence and was not a comment on her silence.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 11, 2000.

*Elaine T. McGruder*, for appellant.
*Joseph J. Drolet, Solicitor, Rand J. Csehy, Assistant Solicitor*, for appellee.

---

[13] *Williams v. State*, 258 Ga. 281, 286 (7) (368 SE2d 742) (1988).

[14] The prosecutor said:
We have met our burden. We've had the defendant admit that she was less safe. We've had the defendant admit that she was drinking on top — I'm not saying that the drugs was the reason why she was unsafe. I'm saying she was unsafe. The alcohol that she consumed — you can't just isolate one piece of evidence. That's ridiculous. Use your common sense. She was unsafe. She was unsafe. The first we heard about the drugs was today. It was surprising. Today.

[15] *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991).

[16] *Cheesman v. State*, 230 Ga. App. 525, 526 (2) (497 SE2d 40) (1998).

[17] Officer Smail: "I asked her whether she was on any type of medication and she gave me a negative response."