## A01A0161. CROY v. THE STATE.
### (545 SE2d 80)

PHIPPS, Judge.

Bobby Croy was convicted of two counts of aggravated child molestation based on evidence showing that he made A. H. place his mouth on Croy's penis and on the penis of A. H.'s younger brother, L. C. In this appeal of his convictions, Croy charges the trial court with error in permitting A. H. to identify him at trial and in admitting and excluding certain evidence. We find no error and affirm.

A. H., who was approximately five years old at the time of the molestations and seven years old at the time of trial, was the first witness to testify. He was asked by the prosecutor whether he saw

---

[3] Id. at 141-142.

[4] Id. at 141, citing *Harris v. New York*, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971) and others.

Croy in court. After A. H. responded "no," the prosecutor asked him to "look in the courtroom and see if you can see him." A. H. again responded in the negative. When the prosecutor then asked A. H. to "[s]tand up" and "take a good look and see if you see Bobby Croy today," defense counsel objected. The trial court overruled the objection, and A. H. proceeded to identify Croy.

A. H.'s mother was the next witness to take the stand. She married Croy's son after divorcing A. H.'s father. She testified that after the divorce, A. H. was visiting her at a time when he was about six years old. While his mother was changing L. C.'s diapers, A. H. suddenly blurted out that "they had made him suck Bobby['s] and [L. C.'s] penis." After A. H.'s mother asked him to repeat the statement, he said that "Bobby" "made him . . . [s]uck Bobby's penis and [L. C.'s]."

A. H.'s mother thereupon telephoned the child's father. A. H.'s father testified that A. H. then made the same disclosures to him and explained that this had occurred while Croy was changing L. C.'s diapers while the two children had been left alone with Croy.

One of A. H.'s classmates testified that A. H. had told him that "this man makes him suck his little brother's private parts and his private parts."

A. H. was interviewed by a Department of Family & Children Services investigator in the presence of the guidance counselor at A. H.'s school. The investigator testified that he conducted the interview in accordance with standard interview techniques by asking A. H. general questions about his living situation and the identity of his relatives. He also asked A. H. to identify his private parts and to distinguish between "good touch" and "bad touch." The investigator then asked A. H. if he had ever been touched. A. H. initially said "no," but when asked about his brother, he said he had been made to "suck his younger brother's weiner." When the investigator asked A. H. who made him do it, A. H. identified Croy. A. H. additionally explained that he and his brother had been left alone with Croy at the time. A. H. provided a physical description of Croy's penis, informed the investigator that he did not enjoy what Croy made him do, and stated that it had left a very bad taste in his mouth. Without being asked, A. H. also attempted to illustrate what had occurred. The investigator and guidance counselor described A. H. as polite and relaxed and said that A. H. had been very willing to engage in discussion and answer questions. Additionally, they testified that he appeared to have a good understanding of the subjects about which he was being questioned.

A. H. was interviewed by a police officer in the presence of another DFACS worker, and an audiotape of that interview was played at trial.

1. Croy first complains that he was identified by A. H. at trial through an unduly suggestive in-court identification procedure.

In *Hayslip v. State*,[1] we recognized that where the witness is laboring under some impairment due to age or infirmity, circumstances may necessitate use of identification procedures not permissible with other witnesses. The witness in *Hayslip* was a woman who was both elderly and myopic. She was unable to identify the defendant from the witness stand, so the trial court allowed her to leave the stand and view the defendant at close range. We found no error.

Here, the witness was a child. Croy objected when the prosecutor asked the child to stand up after he twice testified that he could not see Croy in the courtroom. Croy asserts that there was no need for A. H. to stand because the child's view of him from the witness stand was unobstructed. The State disputes this assertion. Because the transcript provides no resolution of this disputed issue, Croy has not carried his burden of affirmatively showing error by the record.[2]

2. Croy charges the trial court with error in finding sufficient indicia of reliability surrounding A. H.'s out-of-court statements to the State's witnesses so as to warrant admission of their testimony under the Child Hearsay Statute.[3]

Considering the atmosphere and circumstances under which A. H. made the statements, the spontaneity of a number of the statements, the absence of any threats, promise of benefits, or coaching, the consistency of the statements with one another, and the child's provision of certain details which could be found corroborative, the trial court was authorized to find that sufficient indicia of reliability warranted admission of the statements in evidence.[4]

> Further, if defense counsel has the opportunity to cross-examine the witness making the out-of-court statements, those statements are admissible. Here, [A. H.] took the stand and was subjected to cross-examination by [Croy's] counsel. Therefore, the statements were properly admitted.[5]

3. Croy charges the court with error in refusing to allow him to elicit testimony from A. H.'s mother showing that her stepfather had improperly touched her when she was ten years old and had walked into the bathroom while she was taking a bath when she was fifteen.

Although Croy had no evidence that the mother's stepfather had

---

[1] 154 Ga. App. 835 (2) (270 SE2d 61) (1980).

[2] See, e.g., *Hollis v. State*, 201 Ga. App. 224, 225 (1) (411 SE2d 48) (1991).

[3] OCGA § 24-3-16.

[4] See generally *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991).

[5] (Footnote omitted.) *Herrington v. State*, 241 Ga. App. 326, 329 (1) (527 SE2d 33) (1999).

molested A. H., he sought to show the stepfather's improper conduct toward A. H.'s mother for two reasons: the stepfather had access to A. H., and the child used the term "papa" in referring to both his mother's stepfather and to Croy and, thus, may have been confusing the two when he accused Croy of molestation.

When interviewed by the DFACS investigator, A. H. initially identified his "papa" as the perpetrator of the crimes. The DFACS investigator knew that A. H. referred to both Croy and A. H.'s mother's stepfather as "papa," so he tried to determine which of the two A. H. was accusing. The investigator testified that A. H. ultimately identified Croy as the molester and related that the molestation occurred while A. H.'s mother and Croy's son had left A. H. and his brother alone with Croy. On direct examination, A. H. testified that he was sure Croy had committed the acts of molestation and that he was not confusing him with anyone else. The matter was not broached on cross-examination. Under these circumstances, we cannot say that the trial court abused its discretion in finding that evidence concerning improper acts by A. H.'s mother's stepfather toward the mother was not sufficiently probative to warrant its admission in evidence.[6]

4. Croy challenges the admissibility of certain testimony from A. H.'s father, the DFACS investigator who interviewed A. H., the school guidance counselor, and the police officer. Because there was no objection to any of this testimony at trial, the issues Croy now seeks to raise have not been preserved for appellate review.[7] Moreover, Croy's primary complaint is that the State's witnesses were allowed to improperly bolster A. H.'s credibility. We find no merit in this complaint, as none of the witnesses expressed an opinion or belief that the child was telling the truth or was a credible person.[8]

5. Citing *Strickland v. State*,[9] Croy contends that the trial court erred in excluding evidence that A. H. had told one of his babysitters that he used to sleep with his father and uncle.

The babysitter, however, testified that A. H. never accused either man of improper conduct. *Strickland* concerns the admission of evidence of prior false accusations by a rape victim. Because A. H.'s statement to the babysitter does not rise to the level of an accusation, *Strickland* is inapposite.

6. Finally, Croy contends that the trial court erred in charging

---

[6] Cf. *Proper v. State*, 208 Ga. App. 471 (1) (431 SE2d 133) (1993), disapproved on other grounds, *Strickland v. State*, 223 Ga. App. 772, 775 (1) (a) (479 SE2d 125) (1996).

[7] See, e.g., *Earnest v. State*, 262 Ga. 494 (1) (422 SE2d 188) (1992).

[8] See generally *Roberson v. State*, 241 Ga. App. 226, 227 (1) (526 SE2d 428) (1999); *Buice v. State*, 239 Ga. App. 52, 54 (2) (520 SE2d 258) (1999).

[9] 205 Ga. App. 473 (422 SE2d 312) (1992).

the jury that if Croy made A. H. commit sodomy on his infant brother, Croy would be a party to the crime. We find no error in the charge.[10]

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED JANUARY 23, 2001.

*Anthony S. Carter, Douglas R. Daum,* for appellant.
*Alan A. Cook, District Attorney,* for appellee.