A02A0207. NELSON v. THE STATE.
(565 SE2d 551)

MIKELL, Judge.

A jury convicted Everlee Nelson, Jr. of child molestation for sexually abusing the 11-year-old daughter of his girlfriend. The trial court denied his motion for new trial, and this appeal followed. Nelson contends that the trial court erred in admitting testimony under the Child Hearsay Statute, in allowing the victim's videotaped statement to be played for the jury, in admitting similar transaction evidence, in requiring the victim's mother to testify after she invoked her Fifth Amendment privilege against self-incrimination, and in permitting the state to impeach its own witness. Nelson further contends that the court erred when it denied his motion for a continuance, admitted his confession, and denied his motion for a directed verdict. Finally, Nelson assigns error to the court's refusal to charge the jury on illegal detention and its denial of his motion for a new trial. We disagree and affirm Nelson's conviction.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. *Paul v. State*, 231 Ga. App. 528 (499 SE2d 914) (1998). So viewed, the record shows that at the time of the incident in question, the victim's mother had been engaged in a romantic relationship with Nelson for approximately ten years. The 11-year-old victim, S. H., testified that her mother had instructed her to lock her bedroom door when she was home alone with Nelson. Nevertheless, on the night of March 12, 2000, S. H. left her bedroom to get a glass of water while her mother was not home. S. H. changed into jeans and a shirt before going to the kitchen. She encountered Nelson on her way back to her bedroom. According to S. H., Nelson offered her $2 to perform sexual favors, and she refused. Then, he pushed her onto the couch. S. H. testified that Nel-

son held her arms above her head with one hand and pulled her jeans and underwear down with the other. Nelson then removed his shorts and exposed his penis. He put a sheet over S. H.'s face to muffle her cries and attempted to penetrate her vagina with his penis. Nelson was forced to stop because S. H.'s mother returned home and entered the room. According to S. H., after her mother asked who was there, Nelson immediately told her, "I didn't do nothing. I didn't do nothing."

The victim's mother took her daughter for a drive, during which the child described what had happened. When they returned home, Nelson had disabled the telephone, so that S. H.'s mother could not call the police. The next morning, S. H. and her mother went to the Department of Family & Children Services, where S. H. told investigator Debra Roberts about Nelson's actions. Roberts accompanied S. H. and her mother to a local medical clinic, where S. H. was examined. Finally, they proceeded to the LaGrange Police Department. S. H. told Detective Dale Strickland what Nelson had done to her. S. H.'s mother described to the detective what she saw and heard.

On March 15, 2000, the police were notified that Nelson had checked himself into a hospital because he claimed to be considering suicide. When Nelson was discharged from the hospital, Detective Strickland took him into police custody. After waiving his *Miranda* rights, Nelson gave a statement to the police. He told the detective that he drank alcohol and smoked crack on the day of the attack. Nelson claimed that he remembered being downstairs when S. H. went to the kitchen and when S. H.'s mother returned home, but that he did not recall what happened during the time in between. He told the detective that he "drew a blank."

At trial, evidence was introduced to show that Nelson had broken into S. H.'s bedroom one year prior to the attack. S. H. testified that Nelson tried to touch her "private" then, but she awoke and told him to leave her room. Additionally, similar transaction evidence was presented when S. H.'s cousin A. S. testified that in May 1996, when she was 11 years old, Nelson made sexual advances toward her. According to A. S., she was riding in a car driven by Nelson and was holding a baby in her lap when Nelson reached over and rubbed her inner thigh until she pushed his hand away. According to A. S., Nelson told her not to tell anyone what he had done. A. S. reported the behavior to her mother, who filed a police report against Nelson.

1. On appeal, Nelson first argues that the trial court erred in admitting the testimony of Roberts and Detective Strickland under the Child Hearsay Statute, OCGA § 24-3-16. Nelson contends that the state failed to show sufficient indicia of reliability before the tes-

timony describing what S. H. told the witnesses was admitted. We find no error.

Under the Child Hearsay Statute, a statement made by a child under the age of 14 that describes sexual contact or physical abuse by another is admissible in evidence by the testimony of the person to whom the statement was made "if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." OCGA § 24-3-16. As a preliminary matter, we note that "[t]he trial court has broad discretion in determining the admissibility of child hearsay evidence." (Punctuation omitted.) *Woolums v. State*, 247 Ga. App. 306 (1) (540 SE2d 655) (2000), citing *Kight v. State*, 242 Ga. App. 13, 15-16 (1) (528 SE2d 542) (2000). In this case, S. H. testified at trial; therefore, only the second prong of the statute is at issue.

It is well settled that the trial court need not make an express finding with respect to the reliability of a child's hearsay statement prior to its admission. *Crider v. State*, 246 Ga. App. 765, 766-767 (1) (542 SE2d 163) (2000); *Gregg v. State*, 201 Ga. App. 238, 240 (3) (a) (411 SE2d 65) (1991). "A finding of reliability . . . is not a condition precedent to the admissibility of the statement. The question is whether, after both parties have rested, the record contains evidence which would support a finding of reliability." *Crider*, supra at 767 (1). Thus, to the extent that Nelson argues that the court erred in failing to determine the reliability of S. H.'s statements to Roberts and Detective Strickland prior to allowing their testimony, we reject his argument. Further, we conclude that the record contains evidence supporting findings of reliability in connection with the testimony of Roberts and Detective Strickland. See *Croy v. State*, 247 Ga. App. 654, 656 (2) (545 SE2d 80) (2001).

> The factors which the court may consider, when applicable, include but are not limited to the following: (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the

child. . . . These factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness.

(Emphasis omitted.) *Gregg*, supra at 240-241 (3) (b).

First, we find sufficient indicia of reliability surrounding S. H.'s out-of-court statement to Detective Strickland. At trial, the detective testified regarding what S. H. told him about Nelson's actions. Additionally, the state played the videotape of Detective Strickland's interview with S. H. for the jury. At a pretrial hearing, Detective Strickland testified that he interviewed S. H. on the morning immediately following the incident; that S. H. was 11 years old at the time and understood the difference between the truth and a lie; that the statement was given in a comfortable setting in the presence of the victim's mother; that the questions he asked were not leading or suggestive of a desired answer; that S. H.'s statement was freely and voluntarily given; and that S. H. was not threatened or promised anything in exchange for her statement. The court properly found that the statement to Detective Strickland was sufficiently reliable.

Next, we consider Nelson's argument that the court erred in admitting hearsay testimony by Roberts. The transcript shows that Roberts' only testimony regarding S. H.'s statement was the following:

She told me — [S. H.] told me that her mother had gone to take her sister to the grandmother's house and she was at home and she got thirsty and so she came downstairs to get something to drink. As she was going back upstairs she stated that [Nelson] grabbed her and pulled her and threw her on the couch. He pulled her underclothes down and he tried to insert his penis into her, but her mother came in the door at the time that he was trying to do that.

Every event described in the above testimony was testified to by the victim herself in much greater detail, and the victim and Roberts were subject to cross-examination. Accordingly, we find no error in the court's admission of Roberts' brief summary of the child's statement.

[A]ppellant had every conceivable opportunity to examine and cross-examine the child in the presence of the jury, regarding the child's memory of and the circumstances surrounding [her] making of each of the out-of-court statements in question, and had the opportunity to allow the jury to judge the child's demeanor in response to any examination

or cross-examination about the alleged making and veracity of these previous statements. This procedure provided an additional safeguard to appellant's right of fair trial, and provided appellant full opportunity for confrontation.

*Gregg*, supra at 241 (3) (c).

2. In a related error, Nelson contends that the trial court erred in allowing the videotape of S. H.'s interview to be played for the jury. Nelson argues that the state failed to lay a proper foundation for the admission of the tape; however, he does not explain on appeal what the proper foundation should have been, nor did he elaborate when he objected at trial.

We have held that "[o]bjection on the ground of a lack of proper foundation without stating what the proper foundation should be is insufficient and presents nothing for consideration on appeal." (Citations and punctuation omitted.) *Robinson v. State*, 175 Ga. App. 845, 846 (2) (334 SE2d 886) (1985). Accord *Adams v. State*, 264 Ga. 71, 73-74 (4) (440 SE2d 639) (1994). Therefore, this error presents nothing for our review.

3. Nelson argues that the trial court erred in admitting similar transaction evidence against him, because his alleged fondling of A. S. was not sufficiently similar to the offense for which he was being tried. The record shows that the trial court conducted a pre-trial hearing and determined that the testimony of A. S. regarding Nelson's fondling of her inner thigh was admissible. We find no abuse of discretion.

In order for similar transaction evidence to be admissible, the State must show (1) that it seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility, (2) that there is sufficient evidence to establish that the accused committed the independent offense or act, and (3) that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

*Frady v. State*, 245 Ga. App. 832, 834-835 (4) (538 SE2d 893) (2000), citing *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

The trial court properly admitted the similar transaction evidence. First, the state offered A. S.'s testimony for the appropriate purpose of showing Nelson's bent of mind and course of conduct. Sec-

ond, contrary to Nelson's argument, A. S.'s testimony provided sufficient evidence that Nelson fondled her inner thigh. See *Hardeman v. State*, 247 Ga. App. 503, 506-507 (4) (a) (544 SE2d 481) (2001). Finally, the two acts were sufficiently similar. "The rule allowing similar transaction evidence has been most liberally extended in the area of sexual offenses. . . . Acts involving the sexual molestation of children or teenagers, regardless of the type of acts, are of sufficient similarity to be admissible." (Footnotes omitted.) Id. at 506 (4) (a).

4. Next, Nelson contends that the court erred in requiring the victim's mother to testify. The transcript shows that after she was sworn in as a witness, the victim's mother asked the trial court if she could assert her Fifth Amendment privilege against self-incrimination. The court informed her that she was required to testify. Because Nelson failed to object to the court's ruling, this alleged error presents nothing for our review. "As this is a court for the correction of error of law, we will not consider any issues raised on appeal that were not raised and preserved in the trial court." *O'Brien v. State*, 242 Ga. App. 344, 347 (3) (529 SE2d 657) (2000). Furthermore, Nelson lacks standing to assert the victim's mother's privilege against self-incrimination. *Lawton v. State*, 259 Ga. 855, 856 (2) (388 SE2d 691) (1990).

5. Nelson argues that the trial court erred in allowing the state to impeach its own witness. At trial, the victim's mother testified that she did not recall seeing Nelson with his pants down on the night in question. The state pointed out that the mother gave a statement to the police that she had seen Nelson with his pants down on top of S. H. and played a tape of her statement for the jury. Nelson objected on foundation grounds and because the witness had not been declared hostile. The transcript reveals no objection to the state impeaching its own witness. Therefore, this error presents nothing for our review. *O'Brien*, supra.

Additionally, even if Nelson had objected, our conclusion would be the same. "If, at the time of the questioning, a party has knowledge of a prior statement by one of his witnesses which contradicts testimony that witness has just given, that party has been sufficiently entrapped so that he may impeach his witness by use of the prior inconsistent statement." *Davis v. State*, 249 Ga. 309, 314 (3) (290 SE2d 273) (1982). Thus, the trial court properly allowed the state to impeach the victim's mother with her prior inconsistent statement.

6. We reject Nelson's argument that the trial court erred in denying his request for a continuance in order for the defense to locate a witness. The witness, Bubba Williams, had not been subpoenaed by Nelson. In order for a continuance to be granted due to the absence of a witness, OCGA § 17-8-25 requires, among other things, a showing

that the witness has been subpoenaed. Because Nelson failed to subpoena Williams, "there is no basis for overruling the trial court's discretion in denying the motion for continuance." *Griggs v. State*, 208 Ga. App. 768, 770 (2) (432 SE2d 591) (1993).

7. Next, Nelson argues that the trial court erred in admitting his statement to the police because it was not freely and voluntarily given. We disagree.

> The standard for determining the admissibility of a defendant's confession is the preponderance of the evidence. To determine whether a confession was voluntarily made, a trial court must consider the totality of the circumstances, and unless clearly erroneous, a trial court's credibility determinations and factual findings relating to the admissibility of a confession must be upheld on appeal.

(Footnotes omitted.) *Smiley v. State*, 271 Ga. 734, 735-736 (4) (524 SE2d 234) (1999).

We conclude that the trial court's determination was not clearly erroneous. The record shows that prior to admitting Nelson's statement, the court conducted a *Jackson-Denno* hearing to determine if the statement was voluntarily given. Detective Strickland testified that he interviewed Nelson two days after the attack; that he advised Nelson of his constitutional rights; that Nelson said that he understood his rights and wanted to give a statement; ·that Nelson appeared to understand his rights; that Nelson was not coerced or given a promise that he would receive a benefit in return for the statement; that Nelson appeared calm and not under the influence of any intoxicant; and that Nelson was informed of the charges against him.

Nelson contends that the statement was taken while he was in the hospital after threatening to commit suicide; however, the record shows that it was given at the police station after Nelson's arrest. Additionally, in his appellate brief, Nelson states that he was "exasperated" when he gave the statement and that he had been under the influence of drugs. But the only evidence of Nelson's drug use in the record was that he smoked crack and drank alcohol on the day that he molested S. H., which was two days before he spoke to the police.

The evidence in the record supports the trial court's determination that Nelson's statement was voluntarily given. Accordingly, the court did not err. See *Smiley*, supra.

8. Nelson assigns error to the trial court's denial of his motion for a directed verdict. After reviewing the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to authorize the jury to find Nelson guilty of child molestation. *Jack-*

*son v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "Since an appellate court reviewing a trial court's denial of a motion for directed verdict applies the 'sufficiency of the evidence' test of *Jackson v. Virginia,* supra, we also affirm the trial court's denial of appellant's motion for directed verdict of acquittal." *Moore v. State,* 273 Ga. 11, 12 (1) (537 SE2d 334) (2000), citing *Jordan v. State,* 272 Ga. 395 (1) (530 SE2d 192) (2000).

9. Next, Nelson alleges that the court erred in refusing to instruct the jury on the concept of illegal detention; however, he does not explain how the court's decision amounted to reversible error. The only argument Nelson provides is that "[he] had the right to have the jury charge on illegal detention given with regards to his alleged confession." Court of Appeals Rule 27 (c) (2) provides that any enumeration of error which is not supported by citation of authority or argument shall be deemed abandoned. While we certainly could deem this error to have been abandoned, we will briefly address its merits.

The issue of illegal detention was not raised by the evidence in this case. Thus, the giving of Nelson's charge, as submitted, could have misled or confused the jury. "If any portion of a requested charge is inapt, incorrect, misleading, confusing, not adequately adjusted or tailored, or not reasonably raised or authorized by the evidence, denial of the charge request is proper." *Harris v. State,* 202 Ga. App. 618, 621 (4) (c) (414 SE2d 919) (1992). See also *Snoke v. State,* 237 Ga. App. 686, 690 (5) (516 SE2d 541) (1999); *Stinson v. Allstate Ins. Co.,* 212 Ga. App. 179, 182 (2) (a) (441 SE2d 453) (1994); *Jones v. State,* 200 Ga. App. 519, 521 (2) (c) (408 SE2d 823) (1991). Accordingly, Nelson's contention is without merit.

10. Finally, Nelson argues that the court erred in denying his motion for new trial on the ground of ineffective assistance of counsel. We disagree.

In order to establish ineffective assistance of counsel, Nelson must show that his trial counsel's performance was deficient and establish a likelihood that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Zant v. Moon,* 264 Ga. 93, 97 (2) (440 SE2d 657) (1994). Significantly, "[a] reviewing court need not address both components if the defendant makes an insufficient showing on one, nor must the components be addressed in any particular order." (Citations, punctuation and emphasis omitted.) *Rogers v. State,* 195 Ga. App. 446, 447 (2) (394 SE2d 116) (1990). Nelson has provided a list of alleged deficiencies in his trial counsel's performance; however, he has not demonstrated that he was prejudiced. It is well settled that "[i]n order to prove the defense has been prejudiced, defendant must show there is a reasonable probability that the result of the proceed-

ings would have been different but for counsel's unprofessional deficiencies." (Citation and punctuation omitted.) *Thompson v. State*, 191 Ga. App. 906 (1) (383 SE2d 339) (1989). Because Nelson has failed to make this requisite showing, we affirm the trial court's denial of his motion for new trial.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MAY 10, 2002.

*John D. Rasnick*, for appellant.

*Peter J. Skandalakis, District Attorney, Charles P. Boring, Assistant District Attorney*, for appellee.