**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 28, 2015**

# In the Court of Appeals of Georgia

A15A1143. KIRKLAND v. THE STATE.

BARNES, Presiding Judge.

A jury found Shawn Kirkland guilty of aggravated child molestation, and the trial court denied his amended motion for new trial. On appeal, Kirkland contends that the trial court erred in admitting certain similar transaction evidence because it was not sufficiently similar to the charged offense; erred in admitting the victim's recorded forensic interview and witness testimony regarding the victim's outcry because the recording and testimony constituted inadmissible hearsay; and erred in failing to declare a mistrial when the State elicited testimony from a witness that allegedly placed Kirkland's character in issue. Kirkland also contends that the evidence was insufficient

to support his conviction and that his trial counsel rendered ineffective assistance.[1] For the reasons discussed below, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. *Towry v. State*, 304 Ga. App. 139 (695 SE2d 683) (2010). So viewed, the evidence showed that Kirkland lived with his girlfriend, the aunt of three-year-old A.D. Kirkland and his girlfriend had a pool and trampoline at their house, and A.D. and her older sister often would play there. When A.D. and her sister came over to the house, Kirkland would play video games in his bedroom. A.D. would sometimes watch Kirkland as he played video games, and the two would be alone in the bedroom with the door closed.

One day in early September 2011, A.D. was at her great-grandmother's house. As they sat at the kitchen table, A.D. "out of the blue" told her great-grandmother that Kirkland was "gross" and had "put his thing in [her] mouth." A.D. said that when

---

[1] This is the second appearance of this case before this Court. The trial court previously denied Kirkland's amended motion for new trial without considering an expert affidavit filed in support of his ineffective assistance claim. Kirkland appealed that order, and we held in an unpublished opinion that the trial court should have considered the affidavit. We therefore vacated the trial court's order denying Kirkland's amended motion for new trial and remanded the case for the court to consider the affidavit. On remand, the trial court considered the expert affidavit and again denied Kirkland's amended motion for new trial, resulting in the present appeal.

Kirkland put "his thing" in her mouth, "it was choking her." The great-grandmother asked what she meant by "his thing," and A.D. indicated that she meant Kirkland's front private part. The great-grandmother told A.D. to tell her mother what had happened.

A few days later, A.D. was with her mother folding clothes in their home. As they folded clothes, A.D. told her mother that Kirkland was "gross." When her mother asked why Kirkland was gross, A.D. responded, "Because he made me stick his thing down there in my mouth." A.D. said that Kirkland made her do it while she was with him in the bedroom.

After A.D.'s outcry, her mother contacted the sheriff's department, which opened an investigation into the abuse allegations. A forensic interview of A.D. subsequently was conducted. During the interview, A.D. repeated that Kirkland "stuck his thing down there in my mouth" while she was alone with him in the bedroom with the door closed.

Kirkland was arrested and charged with aggravated child molestation for placing his penis in the mouth of A.D. While he was being booked at the sheriff's office, Kirkland commented that he did not know he could be arrested for child molestation without any physical evidence.

During the trial, A.D.'s mother and great-grandmother testified as to A.D.'s outcry statements made to them, and the State introduced and played for the jury the

video recording of A.D.'s forensic interview. A.D., then four years old, also testified at trial. A.D. testified that she went into the bedroom to watch Kirkland "playing a game," the bedroom door was closed, Kirkland at some point paused the game, and she went over to Kirkland. However, when asked what specifically had happened in the room with Kirkland, A.D. gave no response. A.D. nodded affirmatively when asked if Kirkland had ever taken off his shorts, and also when asked, "Did [Kirkland] do anything?" When asked what happened when she "sat down in front of" Kirkland, A.D. responded, "I don't want to say." A.D. again nodded affirmatively when asked if she remembered telling her great-grandmother what had happened, but responded "I forgot" when asked what she had specifically told her great-grandmother. When questioned further about what had occurred, A.D. responded "I forgot" and nodded affirmatively when asked if she was embarrassed.

The State also presented similar transaction evidence. Specifically, A.D.'s ten-year-old sister testified that Kirkland had shown her a vibrator, turned it on to demonstrate how it worked, and encouraged her to "try it" when she went to bed, but she had refused. A.D.'s sister further testified that on a different occasion, Kirkland had asked her if he could watch her change into a bathing suit, but she had said no, and then, on another occasion, had shown her sexually explicit photographs of his girlfriend that

4

were on his cell phone. The sexually explicit photographs shown to A.D.'s sister, which were later obtained from Kirkland's cell phone pursuant to a search warrant, were introduced into evidence.

Kirkland testified in his own defense. Kirkland admitted that there had been times when A.D. was in the bedroom with him while he played video games, but denied that he had ever engaged in any inappropriate sexual contact with A.D. Kirkland also denied the allegations made by A.D.'s sister.

Kirkland's girlfriend also testified in his defense. She testified that Kirkland would always stay in the bedroom when A.D. and her sister came over to visit, and that the children were never allowed to go into that room.

After hearing all the testimony and viewing the forensic interview, the jury found Kirkland guilty of the charged offense. Kirkland filed a motion for new trial, as amended, which the trial court denied.

1. Kirkland contends that the trial court abused its discretion by admitting the similar transaction evidence of his conduct towards A.D.'s older sister.[2] According to

_____

[2] Because Kirkland was tried in 2012, Georgia's revised Evidence Code does not apply to any of the evidentiary issues discussed in this case. See Ga. Laws 2011, Act 52, § 101.

Kirkland, those prior incidents were not sufficiently similar to the charged offense to authorize admission of the similar transaction evidence at trial. We disagree.

> To obtain admission of similar transaction evidence, the State must show (1) that it seeks to introduce the evidence for a proper purpose; (2) that there is sufficient evidence that the accused committed the independent offense or act; and (3) that sufficient similarity exists between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Citation and footnote omitted.) *Alvarez v. State*, 309 Ga. App. 462, 464 (2) (710 SE2d 583) (2011). See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). We will uphold the trial court's factual findings regarding the similarities between the independent offense or act and the charged offense unless clearly erroneous, and we review the trial court's ultimate decision whether to admit the similar transaction evidence only for an abuse of discretion. *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014); *Reed v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012).

The record reflects that before trial, the State provided notice of its intent to introduce evidence of Kirkland's sexually inappropriate conduct towards A.D.'s ten-year-old sister for the purpose of showing Kirkland's bent of mind, common scheme and plan, motive, modus operandi, intent, and course of conduct. The trial court then

6

conducted a pretrial hearing to determine the admissibility of the similar transaction evidence under *Williams*, 261 Ga. at 642 (2) (b), and ruled that the evidence would be admissible at trial for the purposes sought by the State. At the subsequent trial, as previously noted, A.D.'s sister testified about the incidents in which Kirkland showed her a vibrator and attempted to persuade her to use it, asked her to allow him to watch her change into a bathing suit, and showed her sexually explicit photographs of his girlfriend. The trial court gave a limiting instruction regarding the similar transaction evidence when A.D.'s sister testified and in the final charge to the jury.

As noted, Kirkland's sole claim on appeal is that there was insufficient similarity between his conduct towards A.D.'s sister and the charged offense to warrant its admission at trial. But "[w]hen considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question." (Citation and punctuation omitted.) *Dean v. State*, 321 Ga. App. 731, 732 (1) (742 SE2d 758) (2013). "Moreover, Georgia courts construe the rules regarding the use of similar transaction evidence liberally in cases involving sexual offenses." (Citation omitted.) *Alvarez*, 309 Ga. App. at 465 (2). This is particularly true in cases involving the sexual molestation of young children, where we have held that differences "in the victims' ages, sex, and specific acts of molestation

7

[do] not render the similar transaction inadmissible." *Collins v. State*, 310 Ga. App. 613, 617 (2) (714 SE2d 249) (2011). See *Waters v. State*, 303 Ga. App. 187, 190 (2) (692 SE2d 802) (2010) (noting that "the sexual molestation of young children or teenagers, regardless of the type of act, is sufficiently similar to be admissible as similar transaction evidence") (citation and punctuation omitted). Rather, "[t]o show sufficient similarity, there need only be a logical connection between the independent act and the crime charged." (Citation omitted.) *Mills v. State*, 319 Ga. App. 131, 133 (1) (735 SE2d 134) (2012).

Guided by the liberal standard applicable in cases involving sexual offenses against children, we conclude that the trial court committed no error in finding that there was sufficient similarity and connection between Kirkland's inappropriate sexual conduct towards A.D.'s sister and his aggravated child molestation of A.D. Both the similar transaction and the charged offense involved instances where Kirkland preyed on young girls to whom he had access because of his relationship with his girlfriend and her family. Both occurred in the time frame after Kirkland had moved in with his girlfriend, and the acts were committed against siblings. Under these circumstances, the trial court's finding of sufficient similarity was not clearly erroneous, and the court did not abuse its discretion by admitting the similar transaction evidence pertaining to

8

A.D.'s sister. See *Howard v. State*, 287 Ga. App. 214, 215 (651 SE2d 164) (2007) (in case involving the sexual abuse of a female relative by the defendant, evidence of the defendant's prior abuse of a young male relative was sufficiently similar to be admissible); *Chauncey v. State*, 283 Ga. App. 217, 221 (4) (641 SE2d 229) (2007) (evidence that defendant sexually abused other minor siblings was properly introduced as similar transaction evidence). Compare *Perry v. State*, 263 Ga. App. 670, 671 (2) (588 SE2d 838) (2003) (finding insufficient similarity between the defendant's "violent rape of an adult" and his "nonviolent sexual encounter with a minor").

2. Kirkland also contends that the trial court erred in admitting A.D.'s out-of-court statements about the sexual abuse through the testimony of her mother and great-grandmother and through her recorded forensic interview. According to Kirkland, A.D.'s prior statements constituted inadmissible hearsay. We disagree because the statements were admissible under Georgia's former child hearsay statute.[3]

Kirkland argues that A.D.'s prior statements were inadmissible hearsay because "there was no showing that the . . . statements were reliable." Under Georgia's former

---

[3] Kirkland failed to object to the introduction of A.D.'s statements to her mother and great-grandmother on hearsay grounds and thus waived any objection to their admission. See *Brown v. State*, 280 Ga. App. 884, 888 (3) (635 SE2d 240) (2006). But even if Kirkland had properly objected to admission of the statements, his objection would have lacked merit, as we explain in this division.

9

child hearsay statute, the trial court must determine that the circumstances of a child's prior statement "provide sufficient indicia of reliability" for the statement to be admissible. OCGA § 24-3-16 (2012).[4] Several factors may be considered by the trial court in deciding whether a child's statement provides sufficient indicia of reliability:

> The factors which the court may consider, when applicable, include but are not limited to the following: (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.

(Citations and punctuation omitted.) *Tucker v. State*, 208 Ga. App. 441, 442 (430 SE2d 811) (1993). See *Weathersby v. State*, 262 Ga. 126, 128 (4) (b) (414 SE2d 200) (1992); *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991).

---

[4] OCGA § 24-3-16 was repealed by Ga. L. 2011, p. 99, § 2 (effective Jan. 1, 2013). Georgia's current child hearsay statute is codified at OCGA § 24-8-820.

Viewing the totality of the circumstances surrounding the prior statements made by A.D. to her mother, great-grandmother, and the forensic interviewer, we conclude that there was a sufficient basis for the trial court to find that the statements had the requisite degree of reliability to be admissible under the child hearsay statute. The record reflects that A.D.'s initial outcry statements to her mother and great-grandmother were made in a spontaneous manner without any apparent coaching and were consistent with her subsequent forensic interview. Furthermore, A.D. used age-appropriate language in describing what had occurred to her when speaking with her mother, great-grandmother, and the forensic interviewer, and there is no evidence that A.D. was coerced into making any of those statements. Nor is there any evidence of an ulterior motive for her statements, and no evidence that A.D. had ever previously been exposed to sexually explicit material or conduct from which she could have otherwise learned about the sexual act she alleged that Kirkland had committed. Based on these indicia of reliability, the trial court acted within its discretion in admitting A.D.'s prior statements made to her mother, grandmother, and the forensic interviewer. See *Romani v. State*, 303 Ga. App. 829, 830 (1) (695 SE2d 303) (2010); *In the Interest of K.C.*, 258 Ga. App. 363, 365 (1) (a) (574 SE2d 413) (2002); *Croy v. State*, 247 Ga. App. 654, 656 (2) (545 SE2d 80) (2001).

11

Kirkland argues that, because A.D. was unresponsive to several questions posed to her about the abuse when she testified at trial, her prior statements were rendered inadmissible under the child hearsay statute and the confrontation clause of the Sixth Amendment. We disagree. The fact that a child witness is unresponsive or evasive in response to certain questions on the witness stand does not render the child's out-of-court statements inadmissible under the child hearsay statute or violate the Sixth Amendment confrontation rights of the defendant.[5] See *Bright v. State*, 197 Ga. App. 784, 785-786 (4) (400 SE2d 18) (1990). See also *McGarity v. State*, 212 Ga. App. 17, 20-21 (4) (440 SE2d 695) (1994); *Blandburg v. State*, 209 Ga. App. 752, 752-753 (1) (434 SE2d 510) (1993). As we have explained,

> The thrust of the child [hearsay] statute is to allow the jury, which must be convinced of guilt beyond a reasonable doubt, to judge the credibility of a child's accusations. If a child, who has reported child molestation to an adult permitted to testify to the out-of-court statement at trial, is incapable of reiterating the accusation at trial or is unresponsive or evasive [on the witness stand], the jury must decide the child's credibility.

---

[5] We also note that A.D.'s statements to her mother and great-grandmother were not testimonial in nature and thus did not implicate the Sixth Amendment's confrontation clause. See *Hatley v. State*, 290 Ga. 480, 485 (II) (722 SE2d 67) (2012); *In the Interest of S.S.*, 281 Ga. App. 781, 783 (637 SE2d 151) (2006).

12

(Citation and punctuation omitted.) *Amerson v. State*, 268 Ga. App. 855, 855 (1) (602 SE2d 857) (2004). Accordingly, any conflict between A.D.'s prior statements and her unresponsive testimony at trial simply presented a question of credibility to the jury; it did not render the prior statements inadmissible under either the child hearsay statute or the Sixth Amendment's confrontation clause. See id.; *Blandburg*, 209 Ga. App. at 752-753 (1); *McGarity*, 212 Ga. App. at 20-21 (4); *Bright*, 197 Ga. App. at 785-786 (4).

3. Kirkland also contends that there was insufficient evidence to support his aggravated child molestation conviction.[6] We disagree. The evidence introduced at trial and summarized above was sufficient to authorize a rational jury to find Kirkland guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

Although A.D. was unresponsive to several questions posed to her at trial about the sexual abuse, the jury could consider her prior out-of-court statements about the abuse that she made to her mother, great-grandmother, and the forensic interviewer as substantive evidence of Kirkland's guilt under the child hearsay statute. See *Anderson*

---

[6] Kirkland also enumerates as error the trial court's alleged failure to exercise its discretion to sit as a "thirteenth juror" and grant him a new trial on the general grounds, but provides no argument or citation of authority to support his position in his appellate brief. Kirkland therefore has abandoned this enumerated error. See Court of Appeals Rule 25 (c) (2); *Myers v. State*, 302 Ga. App. 753, 754 (1) (691 SE2d 650) (2010).

*v. State*, 315 Ga. App. 679, 681 (1) (727 SE2d 504) (2012). The jury also could take into account the similar transaction evidence of Kirkland's sexually inappropriate conduct towards A.D.'s sister to prove, among other things, his intent, bent of mind, and course of conduct. See *Alvarez*, 309 Ga. App. at 464 (1). And while Kirkland took the stand and denied having committed the charged offense, "it was the exclusive role of the jury to determine witness credibility and to choose what evidence to believe and what to reject." (Citation and punctuation omitted.) Id. The jury could further take into account Kirkland's comment after his arrest that he was unaware he could be arrested for child molestation without any physical evidence.

Kirkland claims that the evidence was insufficient to support his conviction because it did not exclude every reasonable hypothesis except that of his guilt. But the reasonable hypothesis rule applies only where the evidence is entirely circumstantial, see *Lowe v. State*, 288 Ga. 662, 664 (2) (706 SE2d 449) (2011), and there was direct evidence of Kirkland's guilt in the form of the victim's prior statements to her mother, great-grandmother, and the forensic interviewer. See *Meeks v. State*, 281 Ga. App. 334, 337 (636 SE2d 77) (2006). Hence, the reasonable hypothesis rule has no application in this case.

4. Kirkland contends that the trial court erred by failing to declare a mistrial after the prosecutor elicited testimony from Kirkland's girlfriend on cross-examination that Kirkland was unemployed and received disability payments. According to Kirkland, a mistrial was required because his girlfriend's testimony impermissibly placed his character in issue.

The record reflects that Kirkland did not object when his girlfriend was questioned about his employment status or when she was initially questioned about his receipt of disability payments. When the prosecutor went further and asked Kirkland's girlfriend about the "nature of his disability," Kirkland objected on the basis that it placed his character in issue. The trial court sustained the objection, and the prosecutor moved on to other questions. Kirkland never moved for a mistrial.

Where a "defendant fails to show that a motion for a mistrial was made, he has waived this issue for the purposes of appeal." (Citation and punctuation omitted.) *Little v. State*, 332 Ga. App. 553, 555 (2) (774 SE2d 132) (2015). By failing to move for a mistrial on the ground that his character had been improperly placed in issue, Kirkland waived appellate review of this enumeration of error. See *Andrews v. State*, 293 Ga. 701, 704 (4) (749 SE2d 734) (2013); *Coe v. State*, 293 Ga. 233, 238 (4) (748 SE2d 824) (2013).

15

5. Lastly, Kirkland contends that his trial counsel rendered ineffective assistance. "To prevail on his ineffectiveness claim, [Kirkland] must show that counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different." (Footnote omitted.) *Jackson v. State*, 309 Ga. App. 450, 452 (2) (710 SE2d 649) (2011). See *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). If Kirkland fails to prove either the deficiency or prejudice prong of the test, we need not address the other prong. *Russell v. State*, 322 Ga. App. 553, 556 (3) (b) (745 SE2d 774) (2013). "[T]his Court reviews a trial court's ruling on an ineffective assistance claim on appeal by accepting the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Brewer v. State*, 328 Ga. App. 801, 801-802 (762 SE2d 622) (2014). Mindful of these principles, we turn to Kirkland's specific allegations of ineffective assistance.

(a) Kirkland argues that his trial counsel was ineffective for failing to object on hearsay grounds to the admission of A.D.'s out-of-court statements about the sexual abuse through the testimony of her mother and great-grandmother. As explained supra in Division 2, A.D.'s prior statements were properly admitted under Georgia's former

16

child hearsay statute, and thus any objection on hearsay grounds would have been meritless. "[T]he failure to make a meritless objection cannot be evidence of ineffective assistance." (Citation and punctuation omitted.) *Jones v. State*, 329 Ga. App. 439, 448 (4) (765 SE2d 639) (2014).

(b) Kirkland also argues that his trial counsel was ineffective for failing to move for a mistrial when the prosecutor elicited testimony from Kirkland's girlfriend that he was unemployed and on disability. According to Kirkland, his trial counsel should have moved for a mistrial on the ground that the girlfriend's testimony constituted improper character evidence.

To prevail on his ineffective assistance claim, Kirkland must show that there is a reasonable probability that the trial court would have granted a motion for mistrial, if such a motion had been timely made by trial counsel. See *Stubbs v. State*, 315 Ga. App. 482, 485 (4) (727 SE2d 229) (2012); *Pitts v. State*, 260 Ga. App. 553, 561 (8) (a) (580 SE2d 618) (2003). A trial court has broad discretion in deciding whether to grant a mistrial, *Wilcox v. State*, 229 Ga. App. 192, 193 (2) (493 SE2d 600) (1997), and the grant of a mistrial is required only if "it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *York v. State*, 329 Ga. App. 278, 278 (764 SE2d 866) (2014).

17

The trial court would not have abused its discretion by denying a motion for mistrial on the basis that Kirkland's character had impermissibly been placed in issue by the prosecutor's questioning of his girlfriend. As an initial matter, it is questionable whether the girlfriend's testimony that Kirkland was unemployed and on disability put his character in issue. See *Boyd v. State*, 168 Ga. App. 246, 251 (6) (308 SE2d 626) (1983). But even if the girlfriend's testimony could be construed as placing Kirkland's character in issue, it did so only incidentally and said nothing about Kirkland's prior criminal history or about whether he committed the crime of aggravated child molestation charged in this case. Consequently, the jury's determination as to whether Kirkland committed the charged offense would not have been impacted by the girlfriend's testimony. It follows that a mistrial was not essential to the preservation of Kirkland's right to a fair trial. Kirkland therefore cannot show that there is a reasonable probability that the trial court would have granted a motion for mistrial, and thus cannot satisfy the prejudice prong of his ineffective assistance claim. See *Stubbs*, 315 Ga. App. at 485 (4); *Pitts*, 260 Ga. App. at 561 (8) (a).

(c) Kirkland argues that his trial counsel was ineffective for failing to call an expert witness to testify as to the flaws in A.D.'s forensic interview. In support of his argument, Kirkland relies upon the expert affidavit of a licensed marriage and family

18

therapist with experience in the forensic interviewing of children that was filed in support of his amended motion for new trial. The therapist reviewed the recording of A.D.'s forensic interview and averred in her affidavit that "the interview methods used with [A.D.] did not follow standard and accepted protocols for how forensic interviews of children should be conducted and [were] inappropriately leading and suggestive, and, as a result, there is substantial risk that the statements of [A.D.] were unreliable." The therapist pointed to aspects of A.D.'s forensic interview that she considered improper, including the use of anatomically correct dolls and the use of interview techniques that were allegedly leading and suggestive.

On remand from the prior appeal,[7] the trial court considered the expert affidavit of the therapist. The trial court found that Kirkland's trial counsel was deficient for failing to call an expert witness to testify regarding the alleged flaws in A.D.'s forensic interview. However, the trial court concluded that, in light of the other evidence presented by the State, Kirkland could not prove that the failure to call an expert witness to challenge the forensic interview prejudiced his defense. Consequently, the trial court ruled that Kirkland was not entitled to a new trial on the ground of ineffective assistance.

---

[7] See supra footnote 1 for a discussion of the procedural history in this case.

19

Pretermitting whether trial counsel's failure to call an expert witness was deficient performance, we agree with the trial court that Kirkland cannot establish that he was prejudiced by the alleged deficiency. Even if trial counsel had presented an expert to point out aspects of A.D.'s forensic interview that allegedly were flawed, the expert's testimony would not have undermined the admissible evidence of A.D.'s spontaneous statements describing the sexual abuse that were made to her mother and great-grandmother before the forensic interview was conducted. Nor would the expert's testimony have undermined the similar transaction evidence presented by the State or the admission of Kirkland's comment after his arrest that he was unaware he could be arrested for child molestation without any physical evidence. In light of this combined evidence that would not have been undermined by an expert in forensic interviewing, Kirkland cannot show a reasonable probability that, but for the failure to call such an expert, the outcome of his trial would have been different. See *Robinson v. State*, 277 Ga. 75, 77 (2) (586 SE2d 313) (2003) (failure to secure expert in forensic pathology did not prejudice defense, where there was "additional compelling evidence" of the defendant's guilt that would not have been refuted by the expert's testimony); *Barstad v. State*, 329 Ga. App. 214, 220 (3) (764 SE2d 453) (2014) (failure to request funds to hire expert to challenge DNA evidence did not prejudice defense, where DNA evidence

20

was not the "sole link" between the defendant and the crimes, and expert testimony would not have undermined the other compelling evidence of the defendant's guilt). Cf. *Whorton v. State*, 321 Ga. App. 335, 342 (2) (741 SE2d 653) (2013) (improper admission of child's statements made during forensic interview was harmless, where the child's "statements to the forensic interviewers were cumulative of the admissible . . . statements [the child] made to her mother and her mother's boyfriend").[8]

*Judgment affirmed. Ray and McMillian, JJ., concur.*

---

[8] Compare *Darst v. State*, 323 Ga. App. 614, 624-625 (2) (a) (iii), 629-630 (2) (b) (746 SE2d 865) (2013) (physical precedent only) (holding that a new trial was warranted in light of the collective effect of multiple errors by trial counsel, which included the failure to call an expert to criticize "the professionals in this case, including the therapist, the Department case manager, the police investigators, and the psycho-sexual evaluator, each of whom allowed the children to be subjected to repeated, suggestive questioning about the allegations, instead of ensuring that forensic interviews of the children were conducted without unnecessary delay").