**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 29, 2020

# In the Court of Appeals of Georgia

A20A0552. ALLISON v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Madison County entered a judgment of conviction against Brandon James Allison for one count each of child molestation (OCGA § 16-6-4), enticing a child for indecent purposes (OCGA § 16-6-5), and false imprisonment (OCGA § 16-5-41). Allison appeals from the denial of his motion for new trial, arguing that the evidence was insufficient to support his convictions and that the trial court erred in allowing into evidence a video recording of the child victim's interview and in its jury instructions. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, with the defendant no longer enjoying a presumption

of innocence. See *Carolina v. State*, 276 Ga. App. 298, 300 (1) (623 SE2d 151) (2005). We neither weigh the evidence nor determine witness credibility, which are tasks that fall within the exclusive province of the jury, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. Id.; see also *Whorton v. State*, 318 Ga. App. 885 (735 SE2d 7) (2012).

So viewed, the evidence shows that, in November 2016, the victim's mother lived in Danielsville with her four-year-old daughter, who was the victim; her younger son; and her boyfriend, who worked out of town. Allison, the mother's cousin, also lived with them, and he regularly watched the victim and her younger brother while the victim's mother worked from 4:00 p.m. until midnight or later. On the way home from pre-K one day, the victim asked her mother whether boys and girls were supposed to show each other their "no-no;" according to the mother, "no-no" is a term used by her family to refer to a person's private areas. When the mother confirmed that such action would be inappropriate, the victim told her mother that when she and Allison were in the mother's room, Allison "had his fat belly out[,] . . . showed her his 'no-no'[,] and placed her hand on it." The victim also told her mother that she started to cry and asked Allison to let go, but Allison would not let

2

go until the victim promised that she would not tell her mother. After the victim promised him that she would not tell, Allison let go of her hand.

The mother confronted Allison that same day while they were at a local church. Allison threw up his hands, walked away, drove to the mother's house, packed up his belongings, and left before the mother returned home.[1] Later that day, the mother contacted law enforcement, and the victim was scheduled for an interview with a child forensic interviewer at Harmony House Child Advocacy Center. The mother brought to the meeting a number of pictures the victim had drawn representing "no-nos."

On December 1, 2016, the victim met with Adrienne Strickland, the chief forensic interviewer at Harmony House. According to Strickland, the victim's demeanor changed when Strickland began questioning her about Allison; the victim began looking down, shrugging, and saying she didn't want to talk about it. Ultimately, the victim became comfortable with Strickland and used language consistent with younger children, such as "no-no," to describe that Allison made her slowly rub his penis. In fact, the victim provided specific details and corrected Strickland at times when Strickland repeated her details. The victim also

---

[1] The mother did not see Allison again until the trial.

3

demonstrated what was meant by "no-nos" on drawings that were admitted into evidence. Strickland opined that the victim's disclosure was consistent with a child who had suffered sexual abuse. In addition, a video of the victim's interview with Strickland was admitted into evidence. In the video, the victim told Strickland she was on the couch and Allison told her to go into her mother's room. When she went into the room, Allison took her hand, put it on his "no-no," which she indicated on an anatomical drawing meant his penis, and rubbed it with her hand. He rubbed it slowly and it took a long time.

A Madison County grand jury indicted Allison for one count each of child molestation, enticing a child for indecent purposes, and false imprisonment. At the conclusion of the trial, the jury found Allison guilty beyond a reasonable doubt of each count. Thereafter, the trial court entered a judgment of conviction and denied Allison's motion for a new trial. This appeal followed.

1. Addressing Allison's second enumeration first,[2] Allison contends that the trial court erred in allowing into evidence the video of the victim's interview at Harmony House. According to Allison, the video should have been excluded as child

[2] See *Pugh v. State*, 347 Ga. App. 710, 711 (1), n. 5 (820 SE2d 766) (2018) ("For convenience of discussion, we have taken the enumerated errors out of the order in which [Allison] has listed them. . . .") (citation omitted).

hearsay evidence because (1) the victim did not testify as required by OCGA § 24-8-820 (a) in that she merely acknowledged general identity information and then answered that she did not remember anything else, and (2) the victim should have been deemed "unavailable" under OCGA § 24-8-804, even though she took the witness stand at trial, due to her inability or unwillingness to recall the events at issue. We are not persuaded.

OCGA § 24-8-820 (a), which went into effect in 2013,[3] provides that

[a] statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party

---

[3] This statute is substantially similar to former OCGA § 24-3-16:

[A] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

*Hilliard v. State*, 298 Ga. App. 473, 477 (4) (a) (680 SE2d 541) (2009); see also OCGA § 24-3-16 (2012).

5

prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

Although OCGA § 24-8-804 (a) (3) defines an "unavailable" witness for purposes of hearsay as one who "[t]estifies to a lack of memory of the subject matter of the declarant's statement[,]" the Code section clearly limits that definition of unavailability to the exceptions included in the Code section. See OCGA § 24-8-804 (a) (3) ("As used in this Code section, the term 'unavailable as a witness' includes . . .").

In this case, Allison's argument conflates constitutional unavailability for confrontation clause purposes with the statutory definition of unavailability for purposes of the admissibility of hearsay. Here, the victim, who was six-years-old at the time of the trial, took the stand and answered a number of questions posed by the trial judge, indicating that she knew why she was in the courtroom and that she understood she needed to tell the truth. In addition, she answered questions posed by defense counsel, demonstrating she knew the difference between the truth and a lie. The victim answered some general questions, but did not offer any testimony about

the incident. During her testimony, she stated that she did not remember going to Harmony House or speaking with Strickland two years before the trial. At this point, the prosecutor stated that he did not have any further questions. Defense counsel was invited to cross-examine the victim, but indicated she did not have any questions, and the victim was excused.

While there is a dearth of case law regarding what constitutes availability to testify under OCGA § 24-8-820, there are a number of cases decided under the former Code section that are instructive. Furthermore, we note that the Federal Rules of Evidence do not contain a specific equivalent to OCGA 24-8-820, so "Georgia precedent should be principally referenced to interpret this code section." Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 615 (6th Ed. 2018). In that vein, we have held on a number of occasions that "to comport with the Confrontation Clause, the child whose statements are at issue must actually testify at trial[,] . . . [b]ut former OCGA § 24-3-16 does not require the child to corroborate the hearsay testimony." (Citation and punctuation omitted.) *Maurer v. State*, 320 Ga. App. 585, 589 (2) (740 SE2d 318) (2013). Indeed, contrary to Allison's argument, "[t]he fact that a child witness is unresponsive or evasive in response to certain questions on the witness stand does not render the child's out-of-court statements inadmissible under

7

[the former Child Hearsay Statute] or violate the Sixth Amendment confrontation rights of the defendant." *Kirkland v. State*, 334 Ga. App. 26, 32 (2) (778 SE2d 42) (2015); see also *Stegall v. State*, 297 Ga. App. 425, 426 (677 SE2d 441) (2009) ("the availability requirement of [the former Child Hearsay statute] is met whenever the victim takes the stand, even if the victim is uncommunicative or unresponsive") (citation and punctuation omitted); *Bell v. State*, 263 Ga. App. 894, 896 (1) (589 SE2d 653) (2003) (holding that child victim's refusal to respond to questions did not make her an unavailable witness; rather, it merely affected her credibility); *Bright v. State*, 197 Ga. App. 784, 785 (4) (400 SE2d 18) (1990) ("So long as the witness is made available for confrontation and cross-examination, the defendant's rights are protected, even if the witness is uncommunicative or unresponsive.").

Instead, "[a] witness' responsiveness or unresponsiveness, evasiveness or directness, verbal skills, intelligence, memory, perception, and apparent understanding are all factors which can be assessed by the jury and may raise a reasonable doubt." (Citation and punctuation omitted.) *Jones*, 200 Ga. App. at 103; see also *Bell*, 263 Ga. App. at 896 (1).

> The thrust of the child witness statute is to allow the jury, which must be convinced of guilt beyond a reasonable

8

doubt, to judge the credibility of a child's accusations. If a child, who has reported abuse to an adult permitted to testify to the out-of-court statement at trial, is incapable of reiterating the accusation at trial or is unresponsive or evasive during cross-examination, the jury must decide the child's credibility, taking into consideration the child's maturity and ability to withstand the pressure and intimidation of the courtroom environment. The manner in which the witness responds to cross-examination is, itself, evidence as to credibility.

(Citation and punctuation omitted.) *Stegall*, 297 Ga. App. at 426-427.

Here, it is undisputed that the victim appeared at trial, took the witness stand, and was available for cross-examination regarding any lack of memory.[4] Contrary to Allison's assertion, there is no requirement that the child victim testify as to Allison's specific actions or the specific contents of her interview video, let alone that the State successfully elicit such testimony on direct examination. The victim's "prior statements and her unresponsive testimony at trial simply presented a question of credibility to the jury; it did not render the prior statements inadmissible under either the Child Hearsay Statute or the Sixth Amendment's Confrontation Clause."

_____

[4] Once again, we note that Allison did not even attempt to question the victim on cross-examination.

*Kirkland*, 334 Ga. App. at 32-33 (2) (analyzing the prior Child Hearsay Statute). Consequently, the video of the victim's out-of-court statement given to the forensic psychologist at Harmony House comported with the Confrontation Clause and was admissible, and the trial court did not abuse its discretion in admitting the video. See *Morris v. State*, 341 Ga. App. 568, 573 (2) (802 SE2d 13) (2017) ("the trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements . . . only if the trial court abused its discretion") (citation and punctuation omitted).[5]

2. Allison also asserts that the evidence adduced at trial was insufficient to support his convictions. We disagree.

(a) *Child molestation*. Child molestation is committed when a person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). A child "victim's testimony alone is generally sufficient to establish the elements of child molestation." (Citation and punctuation omitted.) *Whorton*, 318 Ga. App. at 889 (1) (b).

---

[5] *Cornell v. State*, upon which Allison relies, applies generally these same principles and, accordingly, does not compel a different result. 349 Ga. App. 883, 884-885 (2) (827 SE2d 63) (2019).

10

Here, Allison was charged with child molestation for exposing his genitals to the victim and causing her to touch his penis and genital area. At trial, the victim's mother testified that the victim told her that when she and Allison were in the mother's room, Allison showed her his "no-no," placed her hand on it, and wouldn't let her hand go until she promised not to tell her mother. The forensic psychologist who interviewed the victim at Harmony House testified that the victim told her that Allison made her slowly rub his penis. In addition, the jury observed a video of the victim's interview with Strickland, during which the victim told Strickland that Allison called her from the couch into her mother's room and, when she got to the room, he took her hand, put it on his "no no," which she indicated on an anatomical drawing meant his penis, and rubbed it slowly with her hand. This evidence was sufficient to convict Allison of child molestation beyond a reasonable doubt. See *Kirkland*, 334 Ga. App. at 33 (3) (finding that although victim was unresponsive to questions posed at trial about sexual abuse, "the jury could consider her prior out-of-court statements about the abuse she made to her mother, great-grandmother, and forensic interviewer as substantive evidence of [the defendant's] guilt"); *Maurer*, 320 Ga. App. at 586, 588 (1) (finding evidence sufficient to sustain child molestation

11

conviction even though victim did not provide details of molestation at trial because forensic interviewer and mother testified to victim's disclosure).[6]

Nevertheless, Allison maintains there were several reasons to doubt the mother's statement about the child's outcry, including a discrepancy regarding when the victim made the outcry, inconsistencies with the victim's interview video, and the mother's addiction at the time of the incident. However,

> [i]t is well settled that it is the function of the jury, not this Court, to judge the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. In so doing, a jury is authorized to believe or disbelieve all or any part of the testimony of the witnesses. Ultimately, as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citation omitted.) *Whorton*, 318 Ga. App. at 888 (1) (b); see also *Clark v. State*, 282 Ga. App. 248, 250 (1) (b) (638 SE2d 397) (2006) ("We defer to the jury's decision on the proper weight and credibility to be given the evidence, because it is the jury's role to choose what evidence to believe and what to reject.") (citation omitted).

As for Allison's assertions that the victim did not testify as to the molestation acts at trial and that, on more than one occasion during her Harmony House interview,

_____

[6] Contrary to Allison's assertion, the law does not require the child victim to corroborate hearsay testimony provided by her mother and the forensic psychologist. *Bell*, 263 Ga. App. at 896 (2).

12

she denied anything happened, it is well settled that, as we stated above, "[i]f a child, who has reported child molestation to an adult permitted to testify to the out-of-court statement at trial, is incapable of reiterating the accusation at trial or is unresponsive or evasive during cross-examination, the jury must decide the child's credibility." (Citation omitted.) *Jones*, 200 Ga. App. at 103; see also *Westbrooks v. State*, 309 Ga. App. 398, 401 (1) (710 SE2d 594) (2011) (same). Moreover, any conflicts between the videotaped statement and the testimony of those whom the victim told about the abuse present a question of credibility to be resolved by the trier of fact. See *Kapua v. State*, 228 Ga. App. 193, 194-195 (1) (491 SE2d 387) (1997); see also *Harvey v. State*, 295 Ga. App. 458, 460 (671 SE2d 924) (2009) ("That some evidence offered by a witness seems contradictory to his own or to some other's, or incomplete or uncertain, does not automatically discredit the evidence given by that witness for it is the function of the trier[] of fact to determine to what evidence it gives credence.") (citation and punctuation omitted). In this case, the jury obviously resolved any credibility or inconsistency issues against Allison and chose to believe, as they were authorized to do, the statement given by the victim in her video interview, as well as the testimony of the victim's mother and the forensic psychologist to whom the victim

13

made an outcry. Accordingly, Allison's challenge to the sufficiency of the evidence supporting his conviction for child molestation lacks merit.

(b) *Enticing a child for indecent purposes*. Under OCGA § 16-6-5 (a), "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." To establish a violation of this statute, the State must prove "a joint operation of the act of enticing a child and the intention to commit acts of indecency or child molestation." *Lasseter v. State*, 197 Ga. App. 498 (1) (399 SE2d 85) (1990).

> The statute has been held to include the element of "asportation," and our Supreme Court has held that this element is satisfied whether the taking involves physical force, enticement, or persuasion. Further, any asportation, however slight, is sufficient to show the element of enticing a child for indecent purposes.

(Citations and punctuation omitted.) *Whorton* , 318 Ga. App. at 887 (1) (a).

Here, the evidence authorized the jury to find that Allison enticed the four-year-old victim to her mother's bedroom with the intention to engage in child molestation as established by his subsequent act of placing the victim's hand on his penis. Calling the victim from the couch into the mother's bedroom was sufficient

14

evidence of asportation. See *Whorton*, 318 Ga. App. at 887 (1) (a). And Allison's actions were sufficient to establish that he acted with the requisite intent at the time he enticed the victim to the bedroom. See *Carolina*, 276 Ga. App. at 301 (1) (a). Accordingly, the evidence was sufficient for a rational trier of fact to find Allison guilty beyond a reasonable doubt of enticing a child for indecent purposes.

(c) *False imprisonment.* "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). Allison claims that the State offered no evidence that he unlawfully detained or confined the child victim. However, the victim's mother testified that the victim told her that even though she was crying and asked him to let go of her hand, Allison would not let go until she promised not to tell her mother. In addition, the victim stated in her video interview that Allison put her hand on his "no no," rubbed it slowly for a long time, and she was thinking during that time that she was going to tell her mother even though Allison kept telling her not to. While the victim did not specifically testify that she wanted to leave her mother's bedroom, the evidence supports a reasonable inference that she desired to leave but was detained by Allison. Such testimony was sufficient to sustain Allison's conviction for false imprisonment. See *Reynolds v. State*, 269 Ga. App. 268,

15

270 (1) (c) (603 SE2d 779) (2004) (finding that false imprisonment conviction supported by rape victim's testimony that "she tried to leave, but the rapist would not permit her to do so").

(d) Concerning his convictions for child molestation and false imprisonment, Allison invites this Court "to act as a thirteenth juror to overturn the verdict." This argument invokes the "general grounds," see OCGA §§ 5-5-20 and 5-5-21, which, when read together,

> afford the *trial court* broad discretion to sit as a thirteenth juror and weigh the evidence on a motion for new trial alleging [the foregoing] general grounds. Our sovereign, the law, has in effect said to the trial judge: We charge you to let no verdict stand unless your conscience approves it, although there may be some slight evidence to support it.

(Citations and punctuation omitted; emphasis supplied.) *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013). As a result,

> *[t]he decision to grant a new trial on grounds that the verdict is strongly against the evidence is one that is solely in the discretion of the trial court.* Whether an appellant is asking this court to review a lower court's refusal to grant a new trial or its refusal to grant a motion for directed verdict, this court can only review the case under the standard espoused in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d

16

560) (1979) to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict.

(Citations and punctuation omitted; emphasis supplied). *Batten v. State*, 295 Ga. 442, 444 (1) (761 SE2d 70) (2014) (citing *Willis v. State*, 263 Ga. 597 (1) (436 SE2d 204) (1993)). Because OCGA §§ 5-5-20 and 5-5-21 offer remedies reserved to the trial court, Allison's argument that *this Court* should "act as a thirteenth juror to overturn the verdict" presents nothing for our review.[7]

3. Finally, Allison contends that the trial court erred in charging the jury that "[t]he testimony of a single witness, if believed, is sufficient to establish a fact. Generally, there is no legal requirement of corroboration of a witness, provided that you find the evidence to be sufficient." In particular, Allison asserts that the trial

---

[7] In Divisions 1 (a) - (c), we reviewed the denial of Allison's motion for new trial under the standard set forth in *Jackson v. Virginia*. See, e.g., *Plez v. State*, 300 Ga. 505, 507 (1), n. 2 (796 SE2d 704) (2017); *Batten*, 295 Ga. at 444 (1). Moreover, Allison does not contend — much less demonstrate — that the trial court failed to apply the proper standard of review or abused its discretion in deciding his motion for new trial on the general grounds. See, e.g., *Copeland v. State*, 325 Ga. App. 668, 672 (3) (754 SE2d 636) (2014) ("It must be presumed, therefore, that the trial court properly exercised its discretion[.]"); see also *Jimenez v. State*, 294 Ga. 474, 475 (754 SE2d 361) (2014). "The trial court having exercised its discretion as the thirteenth juror, and this Court having found the evidence was sufficient to support the verdict, we find no abuse of discretion in its denying the motion for new trial." *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017).

court erred in giving this instruction because it undermined the jury's duty to determine the credibility of witnesses and undercut the reasonable doubt standard because the main evidence against him was the child hearsay video and the child had no recollection of being interviewed or talking to the Harmony House interviewer. However, Allison failed to include any citations of authority in support of his argument. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Lindsey v. State*, 353 Ga. App. 231, 242 (4), n. 40 (836 SE2d 563) (2019). Accordingly, the argument is deemed abandoned.[8] See Court of Appeals Rule 25 (c) (2).

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur*.

---

[8] Nevertheless, we note that the jury instruction was an accurate statement of Georgia law that tracked the pattern charge for testimony by a single witness. See Ga. Suggested Pattern Jury Instructions, Vol. II, Criminal Cases (4th ed.) § 1.31.90; see also OCGA § 24-14-8.