**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be physically received in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 23, 2018**

# In the Court of Appeals of Georgia

A18A0898. PUGH v. THE STATE.

MILLER, Presiding Judge.

A Clayton County jury found Christopher Pugh guilty of one count each of smash and grab burglary (OCGA § 16-7-2), criminal trespass[1] (OCGA § 16-7-21), possession of tools for the commission of crime (OCGA § 16-7-20), and loitering or prowling (OCGA § 16-11-36). Pugh appeals,[2] and in three related enumerations of error, contends that (1) he was functionally denied the assistance of counsel; (2) his

---

[1] The jury found Pugh guilty of criminal trespass as a lesser included offense of criminal damage to property (OCGA § 16-7-23).

[2] Although Pugh filed a pro se motion for new trial, he later received appointed counsel for his appeal, who filed an amended motion for new trial. Shortly thereafter, Pugh's appellate counsel withdrew Pugh's motion for new trial as amended, and Pugh appeals directly to this Court from the judgment of conviction, as authorized by an order granting an out-of-time appeal.

waiver of the right to counsel was not made knowingly, voluntarily, and intelligently; and (3) after the trial court granted his request to proceed pro se, stand-by counsel interfered with his ability to represent himself. We find no error and affirm.

Viewed in a light most favorable to the verdict,[3] evidence revealed that a witness heard glass breaking at the Mount Zion Food Mart across the street from his apartment at approximately 4:00 a.m. on March 24, 2016. The witness then observed an African-American man walk to a business next to the store, retrieve a floor mat from the front of the business, and then return to the store and place the mat over the broken glass. The witness watched the man enter the store and walk around before attempting to open an office door inside the store. Surveillance video obtained from the store owner showed the man carrying a black backpack and attempting to open the office door with "some kind of metal things." The witness telephoned 911 and provided a description of the man, including the man's clothing, and advised that the man left the store and began walking toward Jonesboro Road.

Approximately one-and-a-half blocks from the store, a Clayton County police officer spotted a man matching the description given by the witness. The officer approached the man, who was "sweating very, very heavily in 50 degrees weather,"

---

[3] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

and asked where he had been; the man said he was coming from the area where the store is located. The man consented to a pat-down search by the officer, who found a screwdriver in a right pocket and a pair of pliers in a left pocket. The man also consented to a search of his backpack, in which the officer found a ski mask, rubber gloves, and a blue sweater. The man's clothing matched the clothing reported by the witness and recorded in the store's surveillance video. Ultimately, the officer identified the man as Pugh.

A Clayton County grand jury indicted Pugh on one count each of smash and grab burglary, criminal damage to property, possession of tools for the commission of crime, and loitering or prowling, and he was ultimately convicted of each count.[4] Pugh now appeals.

1. Considering Pugh's second enumeration first,[5] he contends that his waiver of trial counsel was not made knowingly, voluntarily, and intelligently because his decision to waive counsel "was mere acquiescence rather than an intentional

---

[4] See n. 1, supra.

[5] See *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985) ("For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them. . . .").

relinquishment or abandonment of his right to counsel. . . ." This argument is without merit.

It is well settled that "the federal and state constitutions guarantee a criminal defendant both the right to counsel and the right to self-representation." (Citations omitted.) *Wiggins v. State*, 298 Ga. 366, 368 (2) (782 SE2d 31) (2016). "As with all constitutional rights, the accused may forfeit [the right to counsel] by a knowing and intelligent waiver." (Citation omitted.) *Rutledge v. State*, 224 Ga. App. 666, 669 (3) (482 SE2d 403) (1997). As a result,

> [i]f a defendant makes a pre-trial, unequivocal assertion of the right to self-representation, the request must be followed by a hearing to ensure that the defendant knowingly and intelligently waives the "traditional benefits associated with the right to counsel" and understands the "disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open."

(Citations omitted.) *Wiggins*, 298 Ga. at 368 (2). To that end, "[t]his determination depends on the peculiar facts and circumstances of each case [and] a trial judge must investigate as long and as thoroughly as the circumstances of the case before [her] demand" in evaluating the defendant's request to waive counsel. (Citations omitted.) *Martin-Argaw v. State*, 343 Ga. App. 864, 867 (2) (806 SE2d 247) (2017). "The State

bears the burden of proving that a defendant's waiver of counsel is valid, and we review the trial court's ruling on that issue for abuse of discretion." (Footnote omitted.) *Ledford v. State*, 247 Ga. App. 885, 887 (545 SE2d 396) (2001). Of note, "the trial judge is not required to use any particular language in making the defendant aware of his right to counsel and the dangers of self-representation." (Citation omitted.) Id. Rather, "[t]he record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." (Citation and punctuation omitted.) Id. at 868 (2). See also *Middleton v. State*, 254 Ga. App. 648, 649 (1) (563 SE2d 543) (2002) ("The trial court need not use any 'magic words' to determine whether a waiver of counsel is valid, as long as the facts and circumstances of the case show that the defendant has been given sufficient information and guidance to make a knowing and intelligent decision whether to proceed pro se.") (footnote omitted).

In this case, the record clearly demonstrates that Pugh knowingly and intelligently waived his right to counsel. At either his first appearance or at a preliminary hearing,[6] Pugh completed an application for appointed counsel, although

---

[6] The record does not conclusively establish at which initial proceeding Pugh completed an application for appointed counsel. However, we need not resolve that issue to decide Pugh's appeal.

he later informed the trial court that he had "refused" counsel and that he "told them [he] didn't want no representation." During a September 6, 2016 hearing on Pugh's motion to remove appointed counsel, Pugh's appointed counsel advised the trial court that Pugh was "making the request to represent himself and go pro se. . . ." At the conclusion of that hearing, Pugh stated, "I'd like to represent myself." Pugh repeated his intention to proceed pro se during an October 5, 2016 arraignment, advising the trial court, "I want to represent myself, Your Honor." In a November 2, 2016 arraignment, Pugh informed the trial court that he had "filed notice to fire the Public Defender's Office and represent myself in this case" and that he had "a constitutional right to represent myself, okay." The trial court indicated that Pugh's appointed counsel would remain on the case until it could hold a hearing to consider Pugh's request to represent himself.[7]

During a motions hearing, Pugh's appointed counsel indicated that he had discussed Pugh's "pro se status with him [and] he is adamant about representing himself." The trial court referenced its dismissal of Pugh's prior appointed counsel

---

[7] During Pugh's first arraignment, Pugh's appointed counsel noted a conflict of interest. The record does not include a withdrawal by Pugh's appointed counsel; however, a second appointed attorney appeared on Pugh's behalf at his second arraignment.

based upon its perception that Pugh wanted to "receive counsel other than [prior appointed counsel]," to which Pugh responded, "No. I want to represent myself only." What followed was an extended colloquy between Pugh and the trial court in which the trial court asked Pugh about his age, educational background, and previous pro se experiences. The trial court also warned Pugh extensively concerning the dangers of proceeding pro se, including informing him that "self representation is most times considered unwise" and that "you may, in fact, ultimately defend yourself to your detriment," and informed him that he could "miss important defenses to your case." The trial court also advised him on the need to follow rules "that it took years for lawyers to learn"; the potential inability to present his case "in a manner to obtain the most favorable sentence" if he was found guilty; his reduced access to the district attorney's office; that he would "not receive any special treatment or help from the [c]ourt"; that his "ability to investigate, research and prepare [his] defense will be severely limited"; the nature of the charges and the possible penalties Pugh would face upon conviction; and the role of counsel in Pugh's defense.

After the trial court warned him concerning the dangers of proceeding pro se, Pugh acknowledged that he "specifically freely, voluntarily, knowingly and intelligently waive[d] [his] right to have a lawyer represent [him] in this case. . . ."

7

However, Pugh then stated that he waived his right to counsel because he "[did not] have counsel" and because "[c]ounsel is not standing up for [him]." Pugh clarified that he meant that "[n]o one has come [to] visit me to defend this case since I been in the jail." After continued discussion, the trial court took a recess to allow Pugh and his appointed counsel to speak about the case and about Pugh's desire to represent himself. At the conclusion, appointed counsel stated that Pugh was "still to himself"; Pugh agreed, stating, "I want to represent myself." The trial court then concluded that Pugh knowingly, intelligently, and voluntarily waived his right to counsel and assigned appointed counsel to serve as stand-by counsel.[8] Indeed, even after Pugh participated in voir dire and in selecting the trial jury, with stand-by counsel's guidance, Pugh again stated, "I still want to represent myself."

In short, the trial court's detailed explanation and warnings of proceeding pro se, coupled with Pugh's steadfast desire to represent himself — expressed on multiple occasions prior to trial as well as during trial — demonstrate that the trial court correctly found that Pugh knowingly and intelligently waived his right to counsel. See *Martin-Argaw*, supra, 343 Ga. App. at 868 (2). See also *Jones v. State*, 276 Ga. App.

---

[8] In a January 5, 2017 motions calendar hearing, two days after the hearing in which the trial court granted Pugh's request to represent himself, Pugh reiterated his desire to represent himself.

8

762, 763-764 (1) (624 SE2d 291) (2005), overruled on other grounds by *Waits v. State*, 282 Ga. 1 (644 SE2d 127) (2007). As a result, "[a]lthough [Pugh's] decision could be considered foolish and self-defeating, the trial court did not abuse its discretion in concluding that [Pugh's] decision to waive one constitutional right in favor of asserting another was knowing and voluntary." Id. at 764 (1).[9]

2. Pugh also argues that, although he received appointed counsel, he effectively had no representation because neither of his appointed pre-trial attorneys visited him while he was in custody at the Clayton County Jail and only spoke with him when he appeared for court. Accordingly, Pugh asserts that "the mere formality of appointing a lawyer to represent him, without the receipt of any actual assistance from the lawyer, constituted sham and nothing more than formal compliance." We are not persuaded.

---

[9] *Tyner v. State*, cited by Pugh, is inapposite. 334 Ga. App. 890, 894-895 (780 SE2d 494) (2015). In *Tyner*, appointed counsel represented the defendant in pre-trial proceedings and throughout trial. Id. at 890-891. The defendant expressed a desire to waive counsel for closing argument, which the trial court allowed. Id. at 891. The defendant quickly became overwhelmed following a series of objections and an attempt to challenge to trial counsel's conduct, and he asked to withdraw his waiver of counsel and permit trial counsel to continue the argument. Id. at 891-892. The trial court denied the defendant's request, and we reversed, holding that "the trial court's insistence that Tyner continue pro se was unjustified" in view of the importance of closing argument, the verdict, and sentencing. Id. at 892, 895 (1).

Although presented as a claim of a wholesale denial of counsel, see *United States v. Cronic*, 466 U. S. 648, 659 (III) (104 SCt 2039, 80 LE2d 657) (1984), Pugh's argument is more properly construed as a claim of ineffective assistance of counsel. See, e.g., *Weis v. State*, 287 Ga. 46, 53 (1) (b) (694 SE2d 350) (2010).[10]

> [F]or the *Cronic* "constructive denial of counsel" exception to apply, the "attorney's failure must be complete and must occur throughout the proceeding and not merely at specific points." [Pugh's] assertion that his [pre-trial counsel failed to visit him] does not meet this stringent standard. We therefore evaluate [Pugh's] ineffective assistance claims under the usual *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984) deficient performance and resulting prejudice test.

(Citations and punctuation omitted.) *Tepanca v. State*, 297 Ga. 47, 50-51 (6) (771 SE2d 879) (2015).

---

[10] Pugh's broad reliance on *Weis*, for the proposition that the failure to visit a client who is in jail awaiting trial is the equivalent of "wilfully abandoning or disregarding a legal matter entrusted to him[,]" is misplaced. In *Weis*, our Supreme Court evaluated a defendant's claim that he was denied a speedy trial and, in that context, considered the defendant's refusal to cooperate with replacement appointed counsel and their failure to move the defendant's case forward. 287 Ga. at 50-52 (1) (b). The Court specifically identified the attorneys' concerns that they could not effectively represent the defendant due to a lack of funding, but the Court concluded that "the time at which to address those concerns would be through [the defendant] pursuing an ineffective assistance claim against them, if necessary, after trial. . . ." Id. at 53 (1) (b).

Under Georgia law, a claim of ineffective assistance of counsel "must be asserted at the earliest practicable moment and, when it is not, the claim is waived and thus procedurally barred." (Citation omitted.) *Dawson v. State*, 302 Ga. App. 842, 843 (691 SE2d 886) (2010). Relevant to this case,

> [t]he proceeding in which an out-of-time appeal is sought is the proper time to raise the issue of ineffective assistance of counsel. When an out-of-time appeal is sought by means of a motion in the trial court, allegations of ineffective assistance of counsel are germane only insofar as they involve the denial of the defendant's right to appeal, that being the only issue before the trial court. Should the trial court grant the motion, however, the allegations of ineffectiveness become germane to whatever post-conviction relief is sought. The grant of an out-of-time appeal constitutes permission to pursue appropriate post-conviction remedies, *including a motion for new trial*. It follows from that holding and from the requirement that a claim of ineffective assistance of counsel be determined by means of an evidentiary hearing at the earliest practicable moment, that *a claim of ineffective assistance of counsel may not be asserted in an out-of-time appeal unless appellate counsel pursues a motion for new trial, subsequent to the grant of the out-of-time appeal, in which the issue is raised and resolved by means of an evidentiary hearing.*

(Punctuation omitted; emphasis supplied.) *Mays v. State*, 238 Ga. App. 507, 508 (1) (519 SE2d 290) (1999) (citing *Ponder v. State*, 260 Ga. 840, 841-842 (400 SE2d 922)

11

(1991)). See also *Dawson*, supra, 302 Ga. App. at 843-844. Accordingly, "the grant of an out-of-time appeal should be seen as permission to pursue the post-conviction remedies which would be available at the same time as a direct appeal and constitutes permission to pursue appropriate post-conviction remedies." (Citation omitted.) *Dawson*, supra, 302 Ga. App. at 843. As a result, a claim of ineffective assistance of counsel "is procedurally barred unless the defendant's appellate counsel files a motion in the trial court raising the ineffectiveness claim *after* the out-of-time appeal has been granted." (Citations omitted; emphasis supplied.) Id.

Here, we do not reach any arguments concerning Pugh's pre-trial attorneys' ineffectiveness because the same have been waived. Following his April 11, 2017 judgment of conviction, Pugh filed a pro se motion for new trial on May 15, 2017, in which he argued, inter alia, that "counsel was ineffective whether representing [Pugh] as first or second chair. . . ."[11] Pugh also requested appointed counsel to pursue his motion for new trial and subsequent appeal if necessary. In fact, Pugh received

---

[11] Although dated May 3, 2017, the motion was not filed in the clerk's office until May 15, 2017. Our Supreme Court has reaffirmed that the only recognized exception to timely filing requirements for inmates is the filing of an application for a certificate of probable cause to appeal in habeas corpus actions. See *Roberts v. Cooper*, 286 Ga. 657, 660, 661 (691 SE2d 875) (2010). As a result, Pugh's first pro se motion for new trial was untimely and the trial court correctly dismissed it. See *Clemons v. State*, 288 Ga. 445, 446 (3) (704 SE2d 762) (2011).

appointed counsel, who entered an appearance on June 29, 2017. Determining that Pugh's pro se May 15, 2017 motion for new trial was untimely, the trial court dismissed it.

Pugh then filed a second pro se motion for new trial, in which he again raised ineffective assistance of counsel and asked for appointed counsel.[12] Two days later, Pugh's appointed counsel filed an amended motion for new trial, asserting ineffective assistance of counsel. Upon discovering that Pugh's original motion for new trial had been dismissed as untimely, Pugh's counsel filed a motion for an out-of-time appeal and a withdrawal of Pugh's amended motion for new trial. The trial court granted Pugh an out-of-time appeal, after which counsel filed a notice of appeal.

In the present case, then, in order to preserve any potential claim for ineffective assistance of pre-trial counsel, Pugh's appointed appellate counsel was required to file a motion for new trial and seek an evidentiary hearing at the earliest practicable moment — that is, after the trial court granted Pugh an out-of-time appeal. See *Dawson*, supra, 302 Ga. App. at 843-844; *Mays*, supra, 238 Ga. App. at 508 (1).

---

[12] Because counsel had been appointed for Pugh, this pleading was without effect. See *Williams v. Moody*, 287 Ga. 665, 669 (2) (697 SE2d 199) (2010) ("A pro se motion filed by a convicted defendant while represented by counsel is unauthorized and without effect.") (citation and punctuation omitted).

Because that did not occur, Pugh's claims of ineffective assistance of counsel are barred and may only be raised in a petition for habeas corpus. See OCGA § 9-14-40 et seq.; *Dawson*, supra, 302 Ga. App. at 844.

In sum, rather than characterize his pre-trial attorneys' alleged deficiencies as a wholesale denial of counsel, Pugh was required to raise claims of ineffective assistance of counsel at the earliest practicable moment. See, e.g., *Weis*, supra, 287 Ga. at 53 (1) (b); *Dawson*, supra, 302 Ga. App. at 843-844. In this case, the "earliest practicable moment" was in a motion for new trial filed after the trial court granted Pugh an out-of-time appeal. See *Dawson*, supra, 302 Ga. App. at 843-844; *Mays*, supra, 238 Ga. App. at 508 (1). Because Pugh failed to timely present any allegations of ineffective assistance of pre-trial counsel, Pugh's claims are barred and we need not consider them.

3. Finally, Pugh asserts that his "right to self-representation was violated by the material interference of stand-by counsel." In substance, Pugh complains that stand-by counsel — rather than Pugh himself — received service of documents from the State. This enumeration is without merit.

At the outset, the record amply demonstrates that Pugh received all of the discovery in the State's possession. Moreover, to the extent Pugh contends that stand-

14

by counsel interfered with his presentation of his case, the record does not support Pugh's argument.[13]

> [T]he Sixth Amendment right of a defendant to proceed pro se limits the role of standby counsel: . . . First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury, and, second, standby counsel's participation without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself.

(Citations omitted.) *Potts v. State*, 259 Ga. 812, 815-816 (4) (388 SE2d 678) (1990). To the contrary, a plain review of the trial transcript reveals that after Pugh participated in voir dire with stand-by counsel's guidance, Pugh argued pre-trial motions, objected to direct questions posed by the State, cross-examined the State's witnesses, and presented opening statements and closing arguments, all without participation by stand-by counsel. In fact, Pugh asked to consult with stand-by counsel only twice during trial — during cross-examination of a State's witness and at sentencing. In addition, stand-by counsel noted, after voir dire, "from here on in it's

---

[13] To the extent Pugh's arguments may be construed as allegations of ineffective assistance of counsel, the same are waived for the reasons explained in Division 2, supra. See *Dawson*, supra, 302 Ga. App. at 843-844; *Mays*, supra, 238 Ga. App. at 508 (1).

[Pugh's] show." Finally, the trial court advised the jury that Pugh was representing himself with stand-by counsel serving as second chair. Accordingly, Pugh has failed to show error. See *Potts*, supra, 259 Ga. at 816 (4) (reaffirming limited role of stand-by counsel); *Merritt v. State*, 222 Ga. App. 623, 624 (475 SE2d 684) (1996) (no violation of defendant's pro se status by participation of stand-by counsel).

In conclusion, the trial court correctly determined that Pugh knowingly and intelligently waived his right to trial counsel. Moreover, Pugh failed to timely raise allegations of ineffective assistance of pre-trial counsel; as a result, those claims are waived. Finally, the record does not support Pugh's argument that his stand-by counsel interfered with his defense. As a result, we affirm the judgment of the trial court.

*Judgment affirmed. Brown and Goss, JJ., concur.*