**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 6, 2020**

# In the Court of Appeals of Georgia

A19A2220. FAULKNER v. THE STATE.

RICKMAN, Judge.

Following a traffic stop and subsequent vehicle search, Cameron Allen Faulkner was charged by accusation with theft by receiving a stolen firearm, criminal use of an article with an altered identification mark (the firearm), possession of less than one ounce of marijuana, and possession of a firearm by a convicted felon. Faulkner represented himself prior to and during trial, and the jury found him guilty on all counts of the accusation. On appeal, through counsel, Faulkner contends that the trial court abused its discretion by instructing Faulkner at a pretrial hearing that it was too late to challenge the legality of the traffic stop and that the trial court erred

by approving Faulkner's request to represent himself. For reasons that follow, we reverse.[1]

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence presented at trial showed that on May 3, 2016, an officer with the Douglasville police department observed a vehicle driven by Faulkner exceeding the posted speed limit of 70 miles per hour and making several lane changes to overtake other vehicles that were traveling in the fast lane; these actions prompted the officer to initiate a traffic stop for speeding. When the officer approached the vehicle, he informed Faulkner of the reason for the stop and asked for identification. The officer testified that Faulkner acknowledged that he was driving 80 to 82 miles per hour. Faulkner gave the officer his Mississippi driver's license and explained that he was driving a rental vehicle because his vehicle was being repaired and that he was in Atlanta visiting his girlfriend. Faulkner told the officer that he had been using the rental vehicle for several days. The officer testified that Faulkner was unable to focus on the questions being asked, that he looked uncomfortable, and that his breathing was inconsistent with a person who was sitting down. The officer asked

---

[1] The State's motion to dismiss Faulkner's appeal as untimely is denied.

Faulkner to step to the rear of the vehicle while he filled out paperwork and to assist him with any questions he might have.

While Faulkner was out of the car, the officer asked him a series of questions. First, he inquired whether Faulkner had any weapons, and after initially hesitating, Faulkner said "no." The officer next asked if there was anything illegal in the vehicle, and Faulkner responded that he was not involved in anything like that. The officer then asked if Faulkner had any marijuana. Faulkner's initial response was, "do I look high?" He later said no, repeatedly. Faulkner then refused to allow the officer to search the vehicle without a warrant. At that point, the officer was waiting for another officer to arrive. During this time, he was checking Faulkner's license through the State's database.

Two more officers arrived, and one had a canine trained in detection who walked around the vehicle and ultimately alerted on the driver's side front door. The first officer then began searching the vehicle. During the search, the officer found, among other items, a firearm with an altered serial number that had been reported stolen from a pawnshop in Mississippi and a plastic bag containing marijuana.

Faulkner testified and challenged the first officer's testimony about whether the rental car was rented in his name and the officer's testimony that Faulkner was

3

speeding. Faulkner also testified that the firearm could not belong to him because his fingerprints were not on it.[2]

The jury found Faulkner guilty of theft by receiving a stolen firearm,[3] criminal use of an article with an altered identification mark (the firearm),[4] and possession of less than one ounce of marijuana.[5] The State then presented evidence of Faulkner's prior conviction for possession of more than an ounce of marijuana and the jury found Faulkner guilty of the remaining count, possession of a firearm by a convicted felon.

---

[2] An investigator from the Douglas County sheriff's office sought to obtain fingerprints from the firearm, but was unsuccessful.

[3] "A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. 'Receiving' means acquiring possession or control or lending on the security of the property." OCGA § 16-8-7 (a).

[4] "A person commits the offense of criminal use of an article with an altered identification mark when he or she buys, sells, receives, disposes of, conceals, or has in his or her possession a . . . firearm . . . from which he or she knows the manufacturer's name plate, serial number, or any other distinguishing number or identification mark has been removed for the purpose of concealing or destroying the identity of such article." OCGA § 16-9-70 (b).

[5] "It shall be unlawful for any person to possess, have under his or her control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana." OCGA § 16-13-30 (j) (1).

Faulkner obtained court-appointed counsel to handle his appeal, and his counsel filed a motion for new trial in which he challenged the sufficiency of the evidence and asserted an unnamed error by the trial court. He later waived his right to a hearing on the motion for new trial. The trial court denied the motion for new trial, concluding that the evidence of Faulkner's guilt was overwhelming and that Faulkner's defense that he is a Moorish National who is not subject to the laws of the United States is not valid.[6]

1. Faulkner contends that the trial court erred by approving his request to represent himself because the waiver colloquy was insufficient. He argues that his answers to the waiver form employed by the court show that his waiver was not knowing and intelligent.

"[T]he federal and state constitutions guarantee a criminal defendant both the right to counsel and the right to self-representation." *Wiggins v. State*, 298 Ga. 366, 368 (2) (782 SE2d 31) (2016). When a defendant unequivocally asserts his right to self-representation prior to trial, that assertion "must be followed by a hearing to

---

[6] Faulkner objected during the State's opening argument that the charge against him was null and void because the trial court had not responded to a document on "Moorish National Republic" letterhead challenging the court's jurisdiction and seeking production of a certified "delegation of authority order."

5

ensure that the defendant knowingly and intelligently waives the traditional benefits associated with the right to counsel and understands the disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Citations and punctuation omitted.) *Martin-Argaw v. State*, 343 Ga. App. 864, 867 (2) (806 SE2d 247) (2017); see also *Faretta v. California*, 422 U.S. 806, 835 (V) (95 SCt 2525, 45 LEd2d 562) (1975). The trial judge is not required to use any particular language to inform the defendant of his right to counsel and the dangers of self-representation; "[t]he record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998). The State bears the burden of proving that a defendant's waiver of counsel is valid, and there is a presumption against waiver. See *Saunders v. State*, 347 Ga. App. 84, 85 (2) (815 SE2d 622) (2018). We review the trial court's ruling on the waiver issue for abuse of discretion. See *Pugh v. State*, 347 Ga. App. 710, 712 (1) (820 SE2d 766) (2018).

Prior to Faulkner's trial, the trial court held a representation status hearing. When asked if he was going to represent himself, Faulkner responded, "Yes, I will be representing myself in propria persona sui juris. . . ." The trial court then went

through the offenses alleged in each count of the accusation and had counsel for the State inform Faulkner of the maximum penalty for each offense. After confirming that Faulkner could read the English language, the trial court provided Faulkner with a document intended to explain the risks of self-representation. The trial court inquired further and learned that Faulkner had no legal training and no knowledge of the Rules of Evidence. Next, the trial court stated,

> I'm just going over your rights, want to make sure you know what you're up against. And when you undertake to represent yourself, you don't get any special treatment. You're governed by these same rules that he's under, and I'm pointing to . . . the prosecutor. You don't get any special treatment. You have to conduct yourself just like a lawyer would in the case. And the Court would apply those rules, the Rules of Evidence, the Rules of Criminal Procedure in the trial. . . . I don't know if you just don't want to hire a lawyer. If you can't afford a lawyer, of course, the Court would appoint a lawyer for you if you wanted me to do that, and if you qualified, so I just encourage you to think about that. As I say, there are a lot of disadvantages to self-representation. Those are all explained in this – it's called a Faretta waiver. . . . I just want you to read over this and then mark on it, answer the questions, sign it and return it to me, and then I'll sign it and that will let you proceed to represent yourself.

The waiver form that Faulkner filled out asked for background information, and included a series of yes or no questions that addressed the disadvantages of self-representation, the advantages of having a lawyer, his understanding of the charges against him, and the waiver of his right to have a lawyer represent him. Both Faulkner[7] and the trial judge signed the form, and above the judge's signature is a pre-printed statement that provides in part, "[t]he Court finds that the defendant made a knowing, intelligent and voluntary waiver of the right to counsel and is granted the opportunity to represent himself." Faulkner contends that certain of his answers show that his waiver was not knowing and voluntary, such as his responses that he had not received a copy of the accusation and that he did not understand the charges against him. In addition, in response to the question, "Why do you think you could do a better job than a lawyer in representing you in this case?," Faulkner responded, "Not better than lawyer but aware of status of jurisdiction." And when asked, "Do you specifically waive your right to have a lawyer represent you in this case?," Faulkner wrote, "No, but I agree to address the court on behalf of the entity Cameron Faulkner

---

[7] After his signature, Faulkner added "All rights reserved, Flesh and Blood being, In propia-persona sui juris; U.C.C. 1-207/1-308; U.C.C. 1-103."

8

to hear his case in propia sui juris." The record does not indicate that the trial court asked Faulkner about any of these responses.

At a subsequent hearing on Faulkner's representation status, the trial court announced that Faulkner's case had been placed on a jury trial calendar and asked Faulkner if he was going to represent himself. Faulkner responded, "At the moment, I'm still consulting with my counsel members on how we [are] going to proceed with the process and I asked him could we put it off until like September." The trial court then asked, "Well, I had understood you were going to represent yourself on this trial. Aren't you going to represent yourself? Didn't you tell me that?" Faulkner responded, "Yes, sir." Approximately three months later, on the first day of trial, the trial court issued an order which stated that Faulkner had freely and voluntarily chosen to represent himself in this case and outlined certain rules of conduct for the trial.

The State may carry its burden of proving a valid waiver "through either a trial transcript or other extrinsic evidence, including an appropriate pretrial waiver form." (Citation and punctuation omitted.) *Banks v. State*, 332 Ga. App. 259, 260 (1) (772 SE2d 57) (2015). We consider the full record on appeal to determine whether the State has met its burden. See *Rutledge v. State*, 351 Ga. App. 355, 360 (a) (829 SE2d 176) (2019); *Holt v. State*, 244 Ga. App. 341, 344 (1) (535 SE2d 514) (2000). Waiver

9

will not be "lightly presumed," and a trial judge must "indulge every reasonable presumption against waiver." (Citations and punctuation omitted.) *Callaway v. State*, 197 Ga. App. 606, 607 (398 SE2d 856) (1990). The determination of whether the defendant's waiver was knowing and voluntary depends upon the unique facts and circumstances in each case, and "a trial judge must investigate as long and as thoroughly as the circumstances of the case before him demand" to make that determination. (Citation and punctuation omitted.) *Davis v. State*, 279 Ga. App. 628, 630 (1) (631 SE2d 815) (2006).

Here, Faulkner was provided information through the pretrial waiver form and via communication with the trial court and the State. He contends that the three previously mentioned responses on the waiver form demonstrate that his waiver was not knowing and voluntary. Those responses indicate that Faulkner did not understand the charges against him and did not waive his right to have a lawyer represent him in this case. Although the trial court did inform Faulkner of the charges against him, the court did not provide any detail and Faulkner stated that he had not read or been given a copy of the accusation outlining those charges. In addition, Faulkner responded "No" when asked if he waived his right to counsel, but qualified his answer to provide that he would address the court on his own behalf.

10

To prove a knowing and intelligent waiver of the right to counsel, "[t]he record should reflect a finding by the trial court that the defendant has elected to proceed pro se and should show that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel." *Davis*, 279 Ga. App. at 630-631 (1). The challenged responses on the pretrial waiver form do not show that Faulkner clearly made the choice to proceed pro se after he was informed of his right to counsel and the dangers of proceeding without counsel. Also unclear is Faulkner's response to the trial court's questions about self-representation during the second representation status hearing. Initially, when asked if he was going to represent himself at trial, Faulkner said that he was still considering how to proceed and that he had asked for a continuance. When the trial court told Faulkner that its understanding was that Faulkner was going to represent himself, followed by "Aren't you going to represent yourself? Didn't you tell me that?," Faulkner's response was yes, which could have been responsive to either or both questions. If only responsive to the second question, Faulkner's response could indicate that although he had previously told the trial court that he wanted to represent himself, he was currently unsure how to proceed.

11

We are sympathetic to the frustration experienced by the trial court in dealing with a pro se defendant who refused to provide straightforward responses on several pretrial issues under the guise of asserting "sovereign citizen" type arguments. And we recognize that when presented with similar theories of individual sovereignty and immunity from prosecution based on an individual's claimed status of descent, be it as a "sovereign citizen" or a "flesh-and-blood human being," federal courts and this court have determined that such theories should be rejected summarily, however they are presented. See *United States v. Benabe*, 654 F3d 753, 767 (II) (B) (1) (7th Cir. 2011); *Brown v. State*, 346 Ga. App. 245, 247 (4) (816 SE2d 111) (2018) ("Defendants claiming to be 'sovereign citizens' assert that the government is illegitimate and insist that they are not subject to its jurisdiction. The defense has no conceivable validity in American law.") (citation and punctuation omitted); see also *United States v. James*, 328 F3d 953, 954 (7th Cir. 2003) (rejecting argument that Moorish national not required to respect the laws of this nation); *Trevino v. Fla.*, 687 FApp'x 861, 862 (I) (11th Cir. 2017) (legal arguments, including that a person is beyond a court's jurisdiction because he is a "flesh and blood human being," are frivolous); *Perkinson v. Georgia*, No. 5:19-CV-00113-MTT-CHW, 2019 WL 2583513, at *2 (M.D. Ga., June 24, 2019) ("A so-called 'sovereign citizen' generally

12

relies on the Uniform Commercial Code ('UCC'), admiralty laws, and other commercial statutes to argue that, because he has made no contract with the court or government, neither entity can foist any agreement upon him"; this frivolous legal theory has been consistently rejected by federal courts) (citation and punctuation omitted); *United States v. Smalls*, No. 2:16-CR-950, 2018 WL 6065383, at *3 (D.S.C., Nov. 20, 2018) (joining majority of courts that have found no validity to claims that the court lacks jurisdiction over a defendant due to his status as a Moorish National). The rejection of these types of arguments does not, however, alter the required analysis of the waiver of counsel issue.

Here, the trial court did not investigate as long and as thoroughly as the circumstances of the case before him demanded to determine whether Faulkner's waiver was knowing and voluntary. A cursory review of Faulkner's answers on the waiver form would have revealed the potential problems with the responses at issue that could have been addressed by asking Faulkner about them during one of the hearings on his representation status. Given the presumption against waiver, the record before us does not show that Faulkner intentionally relinquished his constitutional right to counsel. See *Saunders*, 347 Ga. App. at 87 (2).

We now consider whether the State has shown that it was harmless to allow Faulkner to represent himself under these circumstances. See *McDaniel v. State*, 327 Ga. App. 673, 680 (1) (c) (761 SE2d 82) (2014) (State bears burden of showing that error did not contribute to the verdict). "We have repeatedly found that the trial court's failure to establish a valid waiver of counsel was not harmless where the record showed that the defendant did not mount an able defense—even though the evidence of guilt was ample." (Citation and punctuation omitted.) *Saunders*, 347 Ga. App. at 88 (2). Faulkner did not mount an able or even coherent defense in this case, as evidenced by his ineffective cross-examinations and rambling testimony. For example, during his cross-examination of the State's main witness, the first officer, Faulkner insisted that the court replay a portion of a video recording of the traffic stop where Faulkner confirmed that he was exceeding the speed limit, suggested that the officer might have stopped him because of his skin color and hairstyle, asked numerous questions about whether the car rental agreement was in his name (which was not an issue in the case), and suggested that the officer was lying under oath and might have planted the gun in the trunk. And during his own brief testimony, Faulkner switched topics several times but continued to focus on whether the first officer was dishonest when he testified that Faulkner told him that he had rented the

14

car he was driving, despite the trial court's repeated instruction that the rental car issue was not relevant. Under the circumstances, we find that the State failed to meet its burden of demonstrating harmless error. See *McDaniel*, 327 Ga. App. at 682 (1). We therefore reverse and remand this case "for the trial court to inquire as to whether [Faulkner] wants an attorney from that point forward, and whatever h[is] election, for the case to be retried."[8] *Saunders*, 347 Ga. App. at 87 (2).

2. Faulkner contends that the trial court abused its discretion by instructing him at a pretrial *Jackson-Denno*[9] hearing that it was too late to raise a suppression issue. He argues that the time for motions had not expired because Faulkner had not been formally arraigned when he challenged the legal basis for the vehicle search. Given our holding in Division 1, we need not address this issue.

*Judgment reversed. Miller, P. J., and Reese, J., concur.*

---

[8] The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and the case may be retried upon remand. See *Garduno v. State*, 299 Ga. App. 32, 33 (2), n.4 (682 SE2d 145) (2009).

[9] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LEd2d 908) (1964).